SWARTZ, Trustee of SIEGEL-HILLMAN DRY GOODS COMPANY, Bankrupt, Appellant, v. FRANK.

**Division One, July 1, 1904.**

1. **BANKRUPTS: Preference: Attorney's Fee.** A fee agreed upon between an attorney and a company in business troubles, for services then and thereafter to be rendered, does not fall within the prohibition against preferences contained in the Federal bankruptcy statute.

2. ———: ———: ———: **Reasonableness.** The State court has no authority to review the amount of money paid an attorney by a bankrupt; all it can do is to declare the preference lawful or unlawful as a whole.

3. ———: ———: ———: **Services Previously Rendered.** Unless there is some evidence to show that the bankrupt was insolvent at the time he paid an attorney for services and that the attorney knew that the assignment was intended as a preference, such payment can not be held to be such.

4. ———: ———: **Evidence.** The general rule of law that a state of facts once shown to exist is ordinarily presumed to continue so until the contrary is shown, is not retrospective. Because a company is shown to be bankrupt at the time its property was sold by the trustee, it does not follow that it was insolvent seven days before the bankrupt proceedings were be-

gun when it made the payment which it is charged was a preference.

5. ———: ———: ———: **Adjudication in Bankruptcy.** An adjudication in bankruptcy is not evidence that the company was insolvent ten days before the filing of the petition therein, if that proceeding was brought about by the filing of a deed of trust in the nature of a general assignment, and that assignment was superinduced by the injury to the company's credit caused by the wrongful bringing of an attachment suit.

6. ———: ———: **Voidable.** Preferences are not by the bankrupt act declared to be void, but are only "voidable by the trustee." Until he elects to treat them as void and to institute suit to recover them, they are binding upon the parties thereto.

7. ———: **Suit to Recover.** A suit to recover money paid by the bankrupt as being void as a preference, must be begun within one year after the adjudication of bankruptcy.

Appeal from St. Louis City Circuit Court.—*Hon. H. D. Wood,* Judge.

AFFIRMED.

*Abbott & Edwards* for appellant.

(1) The court erred in finding that the insolvency of Siegel-Hillman Dry Goods Company had not been shown within the meaning of the bankruptcy act. An adjudication of bankruptcy establishes the bankrupt's insolvency. Calkins v. Bank, 73 S. W. 1098; Landis v. McDonald, 88 Mo. App. 349. (2) The evidence showed that as a matter of fact the Siegel-Hillman Dry Goods Company was insolvent on December 19, 1899. (3) The court erred in refusing to admit the inventory taken of the stock of goods of the Siegel-Hillman Dry Goods Company. (4) Defendant had reasonable cause to believe that he was receiving a preference. (5) Plaintiff was not guilty of laches in not commencing proceedings sooner. (6) The court erred in not entering a decree for plaintiff for $5,000. The evidence shows both that the bankrupt was absolutely insolvent at the time of the

transfer, and that the defendant not only had reasonable cause to believe that fact, but that he actually knew it. The only transfer by a bankrupt when insolvent to his attorney which is protected under the bankrupt law is a transfer the consideration for which is legal services to be rendered in the bankruptcy proceedings. There is no pretense that such a defense is in this case, either under the evidence or the pleadings.

*Richard A. Jones* and *David W. Voyles* for respondent.

(1)    Of the $5,100 paid to respondent, $1,100 was in settlement of an outstanding indebtedness for legal services theretofore rendered and $4,000 for services rendered contemporaneously with and after such payment was made. The second named amount, being for a present consideration, could not in any way be a preference, for payment for a consideration given in the present or to be given in the future, whether in goods or services, is not within the reason of the rule. The object of prohibiting preferences is to prevent favoritism—whether for secret benefit to himself or other reason, amongst the debtor's creditors, who, in fairness, stand on the same footing. A transaction by which the debtor parts with something now, in return for something he acquires or is to acquire in the future is not within the mischief the act seeks to prevent. Furth v. Stahl, 10 Am. Bankr. Rep. 444; Collyer on Bankruptcy (3 Ed.), p. 355; Bank v. Bruce, 109 Fed. 71; In re Wolf, 98 Fed. 84. (2) (a) In order to constitute payment of the $1,100 antecedent indebtedness a preference under the bankruptcy law, the burden is upon plaintiff to establish, first, that at the time such payment was made the Siegel-Hillman Dry Goods Company was insolvent; second, that the effect of such payment was to enable respondent to obtain a greater percentage of his debt than any other creditor of the same class; third, that

at the time such payment was made respondent had reasonable cause to believe that it was intended thereby to give him a preference. Bankruptcy Act of 1898, sec. 60, div. a and b. (b) Insolvency at the time of the payment is an element essential to constitute the transaction a preference. Contemplation of insolvency or contemplation of bankruptcy is not sufficient as under former acts. Bankruptcy Act 1898, sec. 1, div. 15; Collyer on Bankruptcy (3 Ed.), 341. (c) The "fair valuation" mentioned in the definition of insolvency, contained in section 1, division 15, of the bankruptcy act of 1898, means the present reasonable market value of the property. 106 Fed. 858; s. c., 5 Am. Bankr. Rep. 673. (3) The bankruptcy law does not make a transfer of property or payment of money by an insolvent debtor in and of itself a preference. Peterson v. Nash Bros., 7 Am. Bankr. Rep. 185; In re Read & Knight, 7 Am. Bankr. Rep. 112. (4) (a) Making a general assignment for the benefit of creditors, or the doing or failure to do certain other acts prohibited therein, constitute sufficient ground under the bankruptcy law for adjudication as a bankrupt, whether the debtor is solvent or insolvent. Sec. 3, divs. 1 and 4, Bankruptcy Law, 1898; West Co. v. Lea, 174 U. S. 590. (b) So that the mere fact of adjudication in bankruptcy, without proof as to the ground upon which such adjudication is based, is no evidence of insolvency. In re John Chappel, 7 Am. Bankr. Rep. 611, s. c., 113 Fed. 545; In re John Chappel, 7 Am. Bankr. Rep. 612; Lawson on Law of Presumptive Evidence (2 Ed.), rule 37, pp. 238, 239; Jarvis v. Vanderford, 116 N. C. 147; s. c., 21 S. E. 302; Martyn v. Curtis, 67 Vt. 263; s. c., 31 Atl. 296.

MARSHALL, J.—This is a bill in equity to recover $5,100 alleged to have been paid to the defendant, by Siegel-Hillman Dry Goods Company, as a preference. The suit is brought under the bankrupt act of 1898, by Swartz, the trustee in bankruptcy of said com-

pany. The trial court dismissed the bill on the ground that the insolvency of the Siegel-Hillman Dry Goods Company had not been shown within the meaning of the bankrupt act, and the plaintiff appealed. As this is a proceeding in equity, and as no instructions were asked or given, the facts and the law will be considered together.

## I.

The Siegel-Hillman Dry Goods Company ran a large department store in St. Louis. The defendant was an attorney at law and the company was one of his clients.

On December 1, 1899, the company owed him eleven hundred dollars fees for services theretofore rendered to it. A few days thereafter the company sought his services on account of business troubles, and agreed to pay him four thousand dollars for services then rendered and thereafter to be rendered in connection therewith. The trouble was this:

About the last of November, Asiel Putzel & Co., of New York, sent their account against Siegel-Hillman Dry Goods Company, to a St. Louis law firm for collection. The company paid it, but the New York firm, without waiting to hear from their St. Louis attorneys, began an attachment suit against the company in New York. This precipitated a rush of demands for payment by other creditors for claims due and not then due, and about twelve thousand dollars in such claims were placed in the hands of attorneys in St. Louis for collection. Negotiations were at once begun between Hillman, the president of the company, and the defendant, the attorney of the company, who also held some claims against the company for collection, on the one side, and the attorneys who held the claims aforesaid, on the other side, which resulted in an agreement that the company would pay one-third of such claims on December 13, one-third on December 20, and one-third on December

27, and that other claims should not be paid until afterwards. The first payment was promptly made. The defendant was demanding cash for his services, and the company was pleading that it needed all its ready money. Accordingly on December 19, the company assigned to the defendant open accounts held by it against its customers to an amount aggregating $5,107.14, which the defendant thereafter collected with the exception of about two per cent thereof.

The second payment was not met on the day agreed upon, but after banking hours on December 23, the company sent checks therefor to the said attorneys. The twenty-fourth of December 1899, fell on Sunday and the twenty-fifth was Christmas. On December 26, the company executed a deed of trust upon its stock of goods, etc., to Thomas McKittrick, for $223,888.12, as trustee for the Fourth National Bank of St. Louis and three hundred and seventy-seven other creditors. On December 30, 1899, an involuntary petition in bankruptcy was filed against the company. Sometime during the first ten days of January, 1900, the trustee, McKittrick, sold the stock of goods, store fixtures, etc., covered by said deed of trust, for about seventy thousand dollars. On February 6, 1900, the company was adjudged a bankrupt, and on March 10, the plaintiff was elected and qualified as trustee in bankruptcy of said estate. This suit was begun about sixteen months after the adjudication aforesaid.

There is no question that the four-thousand-dollar fee agreed upon in the early part of December, 1899, was for services then and thereafter to be rendered in respect to the business troubles of the company, and, therefore, does not fall within the prohibition against preferences of the Federal statute. [Bankrupt Act, 1898, sec. 60, 30 U. S. Stats. at Large, p. 562.]

This section provides that if a debtor, in contemplation of bankruptcy, pays money or transfers property to an attorney for services, the transaction may

be re-examined by the court upon the petition of the trustee or of a creditor, and only the amount held by the court to be a reasonable amount shall be deemed valid, and the excess may be recovered by the trustee.

This provision of the bankrupt law underwent review by the Supreme Court of Pennsylvania, in Furth v. Stahl, 10 Am. Bankruptcy Reports 442, and it was held that where the money or goods were given in consideration of services presently rendered or thereafter to be rendered, such act was not within the mischief the bankrupt act was aimed against, and was valid, but that the bankrupt court could review the transaction, and if the amount was found to be excessive the excess could be recovered by the trustee.

In Bank v. Bruce, 109 Fed. 69, it was held that where a mortgage was given as security partly "for a present consideration" and partly for an antecedent debt, which was void as to creditors, it was valid as to the first and voidable as a preference as to the latter only.

The same conclusion was reached in In re Wolf, 98 Fed. 84.

The four-thousand-dollar fee for services presently and thereafter to be rendered was, therefore, a valid preference under the bankrupt law. It is plain that if this were not so no person in failing circumstances could secure the advice and services of an attorney.

No attempt is shown to have the Federal court review the amount so paid, and the State courts have no jurisdiction to do so. They can only enforce a recovery where the preference is unlawful. In fact this is not an action to recover the excess over a reasonable amount, but is an action to recover the whole amount as a fraudulent preference under the bankrupt act.

This leaves for consideration only the question as to the $1,100 due for services previously rendered.

Under the bankrupt law (sec. 60, U. S. Stat. at Large, vol. 30, p. 562) a person is deemed to have given

a preference, if, being insolvent, he procures or suffers a judgment to be entered against him, or if he makes a transfer of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class.

And it is further provided by the act, that, "If a bankrupt shall have given a preference within four months before the filing of the petition, or after the filing of the petition and before the adjudication, and the person receiving it, or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property or its value from such person."

And clause 15 of section 1 of the act (U. S. Stats. at Large, vol. 30, p. 544) defines the meaning of the word "insolvent," as used in the act to be:

"A person shall be deemed insolvent within the provisions of this act whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed, or removed, or permitted to be concealed or removed, with intent to defraud, hinder or delay his creditors, shall not, at a fair valuation, be sufficient in amount to pay his debts."

The United States Circuit Court of Appeals for the third Circuit, in Duncan v. Landis, 106 Fed. l. c. 858, speaking of the term "fair valuation" employed in the act, said: "We think that the present market value of the property in question would be a fair valuation of the same, but there is nothing in this section of the act that authorizes that value to be ascertained by what a purchaser would give who desired to take advantage of the necessities and embarrassments of the owner, in order to procure the same at a price less than its real or market value. . . . A man's property, at a fair valuation, may amount to sufficient to pay his debts, al-

though he might not be able to realize at once the amount of that valuation.''

Under the act the strange condition is presented that if a man makes a general assignment for the benefit of his creditors, he may be adjudged a bankrupt, even though he is not shown to have been insolvent. [West Co. v. Lea, 174 U. S. 590.] But a preference is not void unless the debtor was insolvent when it was made, and unless the person receiving it has reasonable cause to believe that it was intended as a preference.

The crucial question in this case, therefore, is whether Siegel-Hillman Dry Goods Company was insolvent on December 19, when the accounts were assigned to the defendant, and whether the defendant had reasonable cause to believe that assignment was intended as a preference. The trial court held that such insolvency was not shown, and this court is asked to review and reverse that finding of fact.

The plaintiff introduced no witness who said the company was insolvent at that time nor that the assignment was intended as a preference. The plaintiff's case is builded entirely upon the state of affairs at a subsequent date, and a deduction therefrom of the condition of the company at the date of the assignment, together with correspondence of the defendant and opinions of some of the attorneys who had claims against the company, but who had never examined the affairs of the company, coupled with a refusal of the company to permit a committee appointed by such attorneys to examine the books of the company at some time prior to December 13.

Thus the plaintiff shows that McKittrick sold the stock, fixtures, etc., for about $70,000, under a deed of trust made on December 26, seven days after the assignment was made. The plaintiff shows by an expert that if the inventory and appraisement that McKittrick had made after he took possession was correct, the company was insolvent by over one hundred thousand dollars.

But the underlying infirmity of the plaintiff's case is that no one says that the inventory and appraisement were correct. McKittrick did not make it, and, therefore, could not and did not so testify. Those whom he employed to make it, were within the jurisdiction of the court, and were not called as witnesses. Hillman, the president of the company, testified emphatically that his assets exceeded in value his liabilities. He had so reported to the meeting of the lawyers who held claims against him, and acting upon that theory they had arranged that their claims were to be paid in full within thirty days. Unless, therefore, the fact that the goods on hand on December 26 sold for seventy thousand dollars is to be taken as evidence of the fair valuation of the goods on hand on December 19, there is no evidence whatever in the case that the company was insolvent.

The general rule of law is that a state of facts once shown to exist is ordinarily presumed to continue so to exist until the contrary is shown. But this presumption is not retrospective. [Lawson on Pres. Ev., p. 238; Jarvis v. Vanderford, 116 N. C. 147; Martyn v. Curtis, 67 Vt. 263.] The court has no more right to presume that the company had the same amount of stock on hand on December 19 as it was shown to have had on December 26, than it would have to presume that the amount on hand on December 19 was either greater or smaller than the amount on hand on December 26. The bulk of the goods on hand on December 19 might have been sold before December 26, especially in view of the holiday season, or the bulk of the goods on hand December 26, might have been received after December 19. The law requires proof and does not indulge in speculations. The correspondence of the defendant offered by the plaintiff affords no basis for the claim that the defendant knew or had reasonable cause to believe that the company was insolvent and intended the assignment of the accounts to him as a preference. On the contrary those

letters, the conduct of the defendant at that time, and the fact that he knew that within about ninety days prior thereto the interest of Mr Hirsh, the owner of an one-third of the company, had been brought by the other stockholders on a par basis, together with the fact that there were only about twelve thousand dollars in claims represented by the attorneys, and the fact that the assets were vastly greater than the amount of debts so shown, is most persuasive evidence that the defendant did not know and did not have reasonable cause to believe that the assignment of the claims to him was intended as a preference. It does not appear that the defendant knew at that time how much the liabilities of the company amounted to. So that he could not know whether or not the company was sol-·vent, even if he knew the value of the assets. Hillman explains the situation by saying that the attachment suit, wrongfully sued out in New York, to collect a debt that was then paid, injured his credit, and precipitated a rush of his creditors to collect debts that were not then due as well as those that were due, and that after the meeting some of the attorneys who participated in it and agreed to the extension of time, demanded immediate and full payment for other claims afterwards received by them for collection and threatened to sue out attachments if they were not paid at once, and so to treat all the creditors alike, the company executed the deed of trust to McKittrick.

The plaintiff, however, claims that the adjudication in bankruptcy is evidence that the company was insolvent. But this is a misapprehension, for in the first place it does not appear upon what ground the company was adjudicated a bankrupt, and as herein shown it might have been adjudged a bankrupt because it made the deed of trust (treating it as a general assignment) and that would not involve the question of whether it was solvent or insolvent. And in the next place the petition in bankruptcy was not filed until December 30, ·

and a finding that the company was insolvent on that date would be no evidence that it was insolvent on December 19.

Without further analysis of the evidence, it therefore appears that the trial court was right in holding that the insolvency of the company on December 19 was not shown. But in addition thereto there is no sustantial evidence in the case that the defendant knew that the assignment was intended as a preference.

## II.

It further appears that the company was adjudged a bankrupt on February 6, 1900, and that this suit was not begun for some sixteen months thereafter, and that by paragraph N of section 57 of the bankrupt act, all claims must be exhibited against the bankrupt estate within one year after the adjudication of bankruptcy, and upon this predicate the defendant claims that the plaintiff has been guilty of such laches as amount to a bar to this action. On the other hand the plaintiff claims that the defendant knew that all claims against a bankrupt estate are barred unless exhibited within one year and also knew that under the provisions of paragraph G of section 57 of the bankrupt act it is necessary for a creditor to surrender his preference as a condition precedent to proving up his claim, and that it is the defendant's own fault if he sat idly by and failed to surrender his preference and prove up his claim.

The infirmity underlying the plaintiff's contention is that preferences are not declared by the act to be void. On the contrary section 60 (p. 562, U. S. Stats. at Large, vol. 30) declares that preferences are *"voidable by the trustee."* Until the trustee elects to treat them as void and to institute suit to recover them, they are binding upon the parties thereto. For without the act the debtor has a right to prefer one creditor over another. If he does so, and becomes bankrupt, the preferred cred-

itor is not called upon to take the initiative, nor to come into court and offer to surrender his preference, and prove up his claim. For *non-constat*, that the trustee will ever attempt to treat it as voidable and to recover it. In short, under the act the preference stands unless attacked by the trustee. Hence, the duty of taking the initiative rests upon the trustee and not upon the preferred creditor. The act allows a preferred creditor to become a general creditor even though he has been unsuccessful in becoming a preferred creditor. That is, it does not treat the preferred creditor as a wrongdoer in procuring or accepting a preference and exclude him from sharing in the general estate as a penalty for such wrongdoing. The prime purpose of the act is to secure an equal distribution of the assets. The premises being true, it follows that a preferred creditor whose debt has been paid in cash or in property, has a right to regard his preference as valid until its validity is challenged by the trustee, and hence he would be very foolish to come into court and surrender his preference and share with the general creditors before the trustee had taken any steps to have the preference declared invalid. It follows that it is the duty of the trustee to take such steps before the time has expired for exhibiting claims against the estate. For, as the Supreme Court of the United States said in reference to usury, in McBroom v. Scottish Inv. Co., 153 U. S. l. c. 329, quoting from Stevens v. Lincoln, 7 Met. 528, "that while the usurious interest is unpaid, there remains the *locus penitentiae;* that the party may relinquish it, and recover the balance of his debt—the contract not being rendered void by the statute," so here, there must be a *locus penitentiae* after the trustee challenges the preference, for the preferred creditor to surrender the preference and prove up his claim, inasmuch as the act does not make the preference void, but only voidable by the trustee. As the time for proving up claims against the estate is limited by the act to one year, the duty devolves upon

the trustee to challenge the preference before the expiration of the year, and sufficiently long before that time to give the preferred creditor a reasonable time in which to surrender the preference and exhibit his claim against the estate. The trustee in this instance waited until after such time had expired, before beginning this suit, and was, therefore, guilty of such laches as bar this action.

Upon the whole record, therefore, the judgment appears to be for the right party, and it is affirmed. All concur.