ETTA L. SWEARINGEN, Appellant, v. WABASH·
RAILROAD COMPANY et al.

### Division Two, June 29, 1909.

1. **NEGLIGENCE: No Evidence.**   The petition charged that the Wabash tracks ran under a bridge or trestle work of the Santa Fe tracks; that the iron posts of said bridge were set so close to the Wabash tracks as to be dangerous to brakemen in the performance of their duties on Wabash trains; that deceased was a brakeman on a Wabash freight train, and was directed by the conductor to go down on a car to examine and watch a hot box, and as he was obeying that direction he was struck by the post and killed.   The testimony showed that he was not so directed, but of his own motion left the engine of the moving train, to examine the hot box, against the suggestion of the engineer that he let it alone; and that he was never again seen alive.   No one saw him strike the post, or saw him on the car, or on any of the other nine cars he had to cross in going from the engine to reach the car with the hot box. It was not shown that there was a ladder on the side of the car, plaintiff's witnesses saying that most of the cars did not have ladders on the side but some of them might have had.   He was found with a broken skull lying five or six feet from the· track near the bridge.   *Held,* that ·the evidence absolutely fails to support the allegations of negligence charged, the manner in which he came to his death is left to conjecture, and the court properly sustained a demurrer to plaintiff's case.

2. ——: ——: **Conjecture: Presumptions.**   A verdict cannot stand upon conjecture; nor can one presumption be based upon another.   Presumptions are inferences drawn from established facts.

Appeal from Jackson Circuit Court.—*Hon. W. B. Teasdale,* Judge.

AFFIRMED.

*McCullough, Aleshire & Showen* and *Hollis & Fidler* for appellant.

"In passing upon a demurrer to the evidence, the court is required to make every inference of fact

in favor of the party offering the evidence, which a jury might, with any degree of propriety, make in his favor; and if, when viewed in this light, it is insufficient to support a verdict in his favor, the demurrer should be sustained. But the court is not at liberty to make inferences of fact in favor of the demurrant to countervail or overthrow either presumptions of law or inference of fact in favor of the other party." Buesching v. St. Louis Gas Light Co., 73 Mo. 219; Cameron v. Railroad, 5 Am. Neg. Rep. 454; Hughes v. Railroad, 48 S. W. 671; Ray v. City of Poplar Bluff, 70 Mo. App. 252; Fitzgerald v. Railroad, 55 N. Y. Supp. 1124, 37 App. Div. 127; Schultz v. Moon, 33 Mo. App. 329; Railroad v. Pointer, 14 Kan. 66. "Presumption is a principle of law, by which, for the furtherance and support of right, facts not established by positive evidence, are inferred from circumstances." Erhart v. Dietrich, 118 Mo. 227; Matthews on Presumptive Evidence, p. 1; Lynch v. Railroad, 112 Mo. 433. "Where the presumption is one of fact the inferences are to be drawn therefrom by the jury." Best on Presumptions, pp. 46-51; Matthews on Presumptive Evidence, pp. 388-399. "The law out of regard to the instinct of self-preservation presumes that a person who has suffered death by a railroad accident, was at the time of the accident in the exercise of due care, and this presumption is not overthrown by the mere fact of the injury." Flynn v. Railroad, 78 Mo. 196; Beusching v. Gas Light Co., 73 Mo. 219; Parsons v. Railroad, 94 Mo. 286. "A structure like a signal post or fence, placed so near the track as to strike the servants when in discharge of their duties is necessarily and inherently dangerous. When it is found that the company has itself placed such a structure (or maintained it) so near the track as to be dangerous to its servants in the discharge of duties assigned to them, and an injury has occurred from that cause without fault on the part of the serv-

ant injured, the liability of the company is fixed. Additional proof is not necessary in such a case." Murphy v. Railroad, 115 Mo. 119; Devlin v. Railroad, 87 Mo. 545; Waldhier v. Railroad, 87 Mo. 37; Johnson, v. Railroad, 41 Am. and Eng. R. R. Cases 293; Railroad v. Davis, 92 Ala. 300. "Evidence of negligence need not be direct and positive; it may be inferred from the surrounding circumstances." Rine v. Railroad, 100 Mo. 228; Haynes v. Railroad, 54 Mo. App. 582; Hudson v. Railroad, 32 Mo. App. 668; Hill v. Scott, 38 Mo. App. 370; McCray v. Railroad, 34 S. W. 95.

*J. L. Minnis* and *Frank P. Sebree* for respondents.

(1) There was a total failure of proof of the material allegations of the petition, and the court did not err in instructing a verdict for defendants. Appellant's whole case is built upon her presumptions and these presumptions, even when taken alone, have no foundation in fact. It is well settled that a fact cannot be established by building one presumption on another. If a certain fact is proven, reasonable inferences of another fact may be drawn from the fact proven, but this is as far as the rule of presumption goes. It is not permissible to undertake the establishment of a fact by several presumptions, the one resting upon the other. The authorities are harmonious and very positive on this question. Swartz v. Frank, 183 Mo. 447; Yarnell v. Railroad, 113 Mo. 580; Douglass v. Mitchell's Exr., 35 Pa. St. 440; State v. Lackland, 136 Mo. 32; Manning v. Ins. Co., 100 U. S. 697; U. S v. Ross, 92 U S. 283; Glick v. Railroad, 57 Mo. App. 104; Bigelow v. Railroad, 48 Mo. App. 372; Moore v. Renick, 95 Mo. App. 211; Diel v. Railroad, 37 Mo. App. 458. (2) There was no evidence of negligence on the part of defendant in reference to the iron post in question. In the Murphy case, 115 Mo. 111, chiefly relied on by appellant, where the engineer was struck

by a fence at a cattle-guard while on the side of his moving engine making repairs, the court laid great weight upon the fact that the engineer had no knowledge of the fact that the fence was close to the track. He had only passed this cattle-guard twice in the day time. The facts in the case at bar concerning the knowledge of the alleged obstruction and its relation to the track are entirely different from the facts in the Murphy case. No intelligent man could have worked switching cars and manipulating the switch under this bridge for years as did Swearingen without observing that these posts were close to the track. And having this knowledge he could not have complained that the company was negligent in respect thereto, nor can plaintiff. On the other hand, his act in getting on the side of the car, if he did so, when the train was approaching this bridge was such negligence on his part as defeats this action.

FOX, J.—The plaintiff, the widow of Charles M. Swearingen, deceased, brought this suit in the circuit court of Jackson county, at Kansas City, Missouri, against the defendant railway company and the defendants Crumrine and Drennen, the locomotive engineer and conductor, respectively of said company, for five thousand dollars damages, for the death of her husband, which occurred May 5, 1902.

The petition in this cause, among other things, alleges "that one of defendant Wabash Railroad Company's lines of railroad extends from Kansas City, Jackson county, Missouri, in an easterly direction to St. Louis, Missouri, by way of a point known on said line as Fleming, at which point the defendant Wabash Railroad Company's road is operated and run under the track of the Atchison, Topeka and Santa Fe Railway Company, which said track is supported by a bridge or trestle-work over the road and tracks of defendant, the Wabash Railroad Company. That de-

fendant, the Wabash Railroad Company, had prior to the injury complained of caused or permitted iron posts to be set and erected on its right of way to support the said bridge or trestle-work and track of said Atchison, Topeka and Santa Fe Railway Company; said posts were set and permitted to be set in a dangerously close proximity to defendant Wabash Railroad Company's track at and prior to the date of the injury herein complained of, making the same dangerous to life and limb of the defendant Wabash Railroad Company's brakemen in the performance of their duties in caring for and managing the cars of said defendant railroad company at said point." Then follows the allegation that on the 5th day of May, 1902, deceased was in the employ of the defendant railway company as brakeman, under the charge and control of the other defendants and especially of the defendant A. Crumrine, the conductor of said train; and "that the defendants caused said train to be run at a dangerously high and reckless rate of speed, to-wit, thirty-five or forty miles per hour, which caused a boxing of one of the wheels of a freight car in said train to become heated and dangerous to said car to be run in that condition. That when nearing said Fleming the defendant, A. Crumrine, conductor as aforesaid, with the knowledge of the defendant, J. Drennen, who was the engineer on the engine of said train, at said time, ordered plaintiff's husband to go forward and climb down the side of said box car and examine and watch said hot box and see if it would do to run to a station a few miles east known as R. & L. Junction, and if not to signal for sidetracking at a station next east and close to said Fleming known as Camden station. That while plaintiff's husband was in the performance of said duty at said point and when down on the ladder on the side of said car to make the examination in obedience to said order he was struck by one of said iron posts which knocked

him off the side of said car and caused his death. That plaintiff's husband had never before done such work at said point and did not know of the dangerous position of said posts, nor of his nearness to said locality, the night being dark, but the defendants knew or by the exercise of reasonable care on their part 'would have known of the danger, and with such knowledge did carelessly and negligently at said time order plaintiff's husband to perform the duties as aforesaid at said dangerous place, and defendants well knowing that he was in the performance of said duty, did carelessly and negligently run and cause said train to be run at said dangerous, high and reckless rate of speed as aforesaid," etc.

The answer of the defendants was a general denial.

Upon the trial the defendants objected to the introduction of evidence as to the defendant Drennen on the ground that the petition did not state a cause of action as to this defendant, which objection was sustained.

The facts of the case upon the record are, that on the 5th day of May, 1902, Charles M. Swearingen, the husband of plaintiff, was, and for a period of five years prior thereto had been, an employee of the defendant as a brakeman on freight trains running between Moberly and Kansas City, Missouri. On that day he was on a through freight which left Kansas City at 5:30 o'clock p. m. for Moberly. This train left Harlem, Missouri, just across the Missouri river from Kansas City, Missouri, an hour and five minutes late, and just before reaching Orrick, a station about thirty miles east of Kansas City, a hot box was discovered by Mr. Swearingen on the rear truck of a Rock Island freight car, located about the middle of the train consisting of nineteen loaded cars, and Mr. Swearingen reported it to the conductor, Crumrine. This hot box was on the front journal of the rear truck

on the north side of the car, the course of the train being eastward. The train was stopped at Orrick, the hot box cooled off and the conductor and brakeman attached what is called a water bag to this box. This water bag is described as being of canvas and holds about three buckets of water. There is a hose connected with it about two feet and a half long with a nozzle at the end and a clamp so that it can be fastened to the car and so arranged that it would throw a stream of water about the size of the lead in a pencil on the journal next to the brass for the purpose of cooling it off. The deceased was present when this water bag was attached, and when all was ready for the train to proceed the evidence shows that the conductor thought they had just about time enough, if the box ran cool, to make Lexington Junction, and there meet a passenger train, and the conductor said to Swearingen, "We'll have to watch this box and if it won't run with water running on it, we'll have to stop at Camden and head in out of the way of No. 9 to put in a brass." Camden was about six miles from Orrick. As the train started, Swearingen said to the conductor, "I'll go overboard, I'll watch it from there," and the conductor said to him, "All right. You can do as you like about that." Swearingen went forward and got on the engine, the conductor got on the caboose and the train started on its way. Shortly after the train left Orrick Swearingen said to the engineer, "I'll go back and look at the box, and if it's all right we go to Lexington then, and if not we had better head in at Camden." The engineer testified that he told Swearingen not to go, saying, "Let the box go to Lexington then and let the car repairer look after it. We can wait there for No. 9, and you will have time to look after it while we are there." The engineer was looking forward through his window at that time and did not see Swearingen leave the engine, nor did he or anybody else see him alive again.

The train proceeded running about thirty miles an hour until it reached Lexington Junction, about ten or twelve miles east of Orrick. At Camden the conductor says he missed Swearingen; that he also noticed the box, that there was nothing showing up on it, and added, "I thought probably that he had seen the box was all right and went back to the engine again or if he had left the train I didn't know; I didn't see nothing of him." At Lexington Junction, when Swearingen's absence from the train was discovered by the crew, they detached the engine and caboose from the train, lit torches and lamps and went back looking for him. They found his body at a siding called Fleming, about three miles east of Orrick. The body lay about six or seven feet north of the track and about fifteen or eighteen feet east of a girder bridge which passed over the Wabash railroad tracks at that point. The face of the body was bruised and scratched and on the back of the head the skull was crushed. The cap Swearingen had worn was found between the body and this bridge, the front part of which was broken or mashed in.

Witness Gear testified that the morning following the accident he made an examination of the iron post at the end of the bridge; that he found a dent on it about six feet from the ground; this dent was twelve or fourteen inches long and about two inches wide. Conductor Crumrine testified that he made an examination of this post, but found no mark or dent of any kind on it. The distance between the iron post and the outer edge of a box car is estimated by the witnesses testifying upon this point, to be from twenty to twenty-four inches.

The Atchison, Topeka & Santa Fe Railroad crosses the Wabash Railroad at this point overhead and this bridge was constructed by the Atchison, Topeka & Santa Fe Railroad Company sometime after the Wabash Railroad Company had built and occupied its

railroad at this point. In building its railroad the Atchison, Topeka & Santa Fe Railroad Company constructed this bridge, and in doing so placed two upright iron posts—one on the north and the other on the south side of the Wabash track—which were the supports of the bridge. These railroads did not cross at right angles but diagonally, hence one of the posts was on the north and the other on the south side of the Wabash track. The posts were located four and a half feet from the Wabash track, and this had been the condition there for a time exceeding nine years prior to the time of the accident. The evidence showed that the Wabash track under this bridge and for at least a quarter of a mile both east and west of it was straight and in good condition. The evidence also showed that the deceased had worked on local freight trains between Moberly and Kansas City for several years immediately preceding his death, and that almost daily these trains stopped at Fleming to do switching on a side track which ended directly under this bridge.

The only evidence in the record of the character of car and as to whether there was any ladder on same was that given by witness introduced by plaintiff, Mr. Crumrine, the conductor of the train referred to, as follows:

"Q. Do you know what character this (car) was, whether it was an ordinary box car, that the hot box was under? A. Why, I think it was just an ordinary box car, I am pretty positive of it really.

"Q. Did it have ladders on the side? A. Well, now I couldn't say that, but most of them Rock Island box cars has no ladder on the side, they have their ladders on the end, this was a Rock Island box car.

"Q. Well, do you know whether this is a Rock Island box car? A. Yes, sir.

"Q. Do you know there was no ladder on the side? A. I wouldn't say positive whether there was or not."

On cross-examination this witness further said on this point:

"Q. You spoke about the character of car. You say it was a Rock Island? A. Yes, sir.

"Q. Now, you say you are not sure whether there was a ladder on the side or on the end? A. No, sir; I am not sure of that.

"Q. The Rock Island cars generally don't have any ladder on the side? A. No.

"Q. They do have on the end of the car? A. They have it on the end of the car, and very few of them over on the side."

This witness further testified on the part of the plaintiff that there was room between the posts and the box car for a man the size of plaintiff to pass safely on a ladder on the side of the car, but that he would have to get pretty close to the car. Witness Crumrine also testified that he did not order the deceased to get on the side of the car, but simply that he should watch the hot box, and that in order to watch it, it was not necessary for him to get on the side of the car, but that he could have performed this duty from the top of the train without leaning over the side.

This substantially indicates the nature and character of the testimony upon which appellant relied in the trial court for a recovery, with the exception of a deposition offered in evidence of a witness by the name of B. B. Morris. His testimony was in the nature of expert testimony. He was not at work on the train when this accident occurred, nor had he been working on this line of road for some time previous. There is a dispute between counsel as to what portion of this deposition was admitted in evidence. The appellant embraced the entire deposition in her ab-

stract and respondent filed an additional abstract, in which a large portion of the deposition is left out, as asserted by counsel, on the ground that objections were made to certain questions and answers and by the court sustained. The original deposition was filed in this court for our inspection, and we find in an abbreviated form to certain questions and answers, objections made; then following the objection is the letter "S." While it is true that the ground of the objections to the questions and answers are not fully indicated upon the deposition, nor is the word "sustained" fully written out; but we take it that it is common knowledge that in the trial of cases, when depositions are used, neither the trial court nor counsel representing the parties undertake to set out fully the objections upon the deposition itself, but it is common practice to merely, in an abbreviated form, indicate the objections and the ruling of the court as to the particular questions and answers which were not offered in evidence, for the purpose of a guide in copying the deposition to omit those questions and answers objected to, where the objections were sustained. We do not deem it essential to reproduce the deposition of witness Morris, as in our opinion, his testimony, as admitted, does not affect materially the rights of the parties in this controversy.

At the close of the plaintiff's evidence, at the request of the defendants, the court instructed the jury that under the pleadings and evidence their verdict must be for the defendants, and the jury returned their verdict in accordance with such instructions.

Timely motions for new trial and in arrest of judgment were filed and by the court overruled. From the judgment and decree entered in this cause the plaintiff appeals, and the record is now before us for review.

## OPINION.

The record in this cause discloses but one legal proposition, that is embraced in the assignment of error that the court, at the close of the evidence on the part of the plaintiff, erroneously declined to submit the cause to the jury, and gave a peremptory instruction to the jury to find the issues for the defendant.

We have indicated in the statement of this cause the allegation in the petition, in which is embraced the charge of the specific negligence relied upon by the plaintiff for a recovery in this cause. We have also set out substantially the testimony offered by the plaintiff to support the allegation of negligence in the petition. We have carefully read in detail all of the disclosures of the record, and while it must be conceded by every one that this was an unfortunate accident, yet it must not be overlooked that this is simply a lawsuit in which it is charged that plaintiff's husband lost his life through specific acts of negligence alleged in the petition, and in order to warrant a recovery there must be at least some substantial testimony tending to establish such acts of negligence which resulted in the death of her husband.

After a most careful consideration of all the evidence, we see no escape from the conclusion that there is an entire absence of any substantial evidence showing how the deceased met his death.

The petition alleges that at a point on defendant's line of railroad known as Fleming, the defendant railway company is operated and run under the track of the Atchison, Topeka & Santa Fe Railway Company, which said track is supported by a bridge or trestle-work over the road and tracks of defendant, the Wabash Railroad Company. That defendant, the Wabash Railroad Company, had prior to the

injury complained of caused or permitted iron posts to be set and erected on its right of way to support the said bridge or trestle-work and track of said Atchison, Topeka & Santa Fe Railroad Company. It is further alleged that said posts were set and permitted to be set in a dangerously close proximity to defendant's railway track at and prior to the date of the injury herein complained of, making the same dangerous to life and limb of the defendant Wabash Railway Company's brakemen in the performance of their duties in caring for and managing the cars of said defendant railroad company at said point. In addition to this there are allegations that the train upon which plaintiff's deceased husband was working was run at a dangerously high and reckless rate of speed, which caused a boxing of one of the wheels to become heated and dangerous to said car to be run in that condition. It is further charged that the conductor, with the knowledge of the engineer operating said train, "ordered plaintiff's husband to go forward and climb down the side of said box car and examine and watch said hot box and see if it would do to run to a station a few miles east known as R. & L. Junction, and if not to signal for sidetracking at a station next east and close to said Fleming known as Camden station." It is then charged that plaintiff's husband, in pursuance to the directions given him by the conductor, with the knowledge of the engineer, went down on the ladder on the side of said car to make the examination, and that while on said ladder he was struck by one of the iron posts, which knocked him off the side of said car and caused his death.

We repeat, that the testimony absolutely fails to support the allegations of negligence as charged in the petition. It is assumed by the appellant that her husband was knocked off of a freight car by striking an iron post on the side of the track while he was standing on a ladder on the side of the car examining a hot

box. This, in our opinion, is predicated upon mere conjecture. There was no testimony that there was a ladder on the side of this car. The only evidence introduced upon that subject was given by Mr. Crumrine, the conductor of the train, and he stated that this was a Rock Island box car, and while he would not say positively whether there was any ladder on this particular car or not, he said most of the Rock Island cars had no ladders on the side; that their ladders were on the end. In giving his testimony he indicated perfect fairness, and stated that he would not undertake to state positively that there was no ladder on the side of the car, but simply answered that this was a Rock Island car and that those cars generally did not have any ladder on the side.

There was no evidence introduced that plaintiff's husband went down on any ladder to examine a hot box. The testimony clearly shows that the deceased was upon the engine, and there is no evidence by any witness that Mr. Swearingen was seen after he left the engine. In order to reach the car which was affected by the heated box the plaintiff's husband would have had to walk over about ten cars before reaching this particular car. No one saw him, and in fact the record is absolutely silent as to when or how he fell off this train.

Upon the trial plaintiff offered no evidence tending to establish the allegation that her husband had been directed by the conductor or the engineer to go down on the ladder and examine the heated box while the train was in motion. The only testimony introduced upon that subject was by the conductor and the engineer, who both testified positively that they did not so direct him. The engineer also testified that when plaintiff's husband suggested that he would go back and look at the box he told him not to go, say-

221 Sup—42

ing, "Let the box go to Lexington then and let the car repairer look after it. We can wait there for No. 9, and you will have time to look after it while we are there." The engineer said that about the time of this conversation he was looking forward through his engine, and in fact did not see Swearingen leave the engine; nor did he or anybody else see him alive again. It follows from this that not only was there an absolute failure to make any proof of the allegations about directions to plaintiff's husband concerning the heated box, but the proof absolutely shows that no such directions were given.

It is also assumed by the appellant that while standing on the ladder on the side of the car the deceased struck the post of the Santa Fe bridge and was thereby killed. A careful examination of the evidence disclosed by the record shows that there was no substantial evidence to prove this fact. The conductor testifies that he made an examination to see if he could find any marks of any kind on this post, and he states positively that he could find none. George Gear, a witness for the plaintiff, did testify that there was a dent on the iron post six or seven feet from the ground; that this dent was twelve or fourteen inches long and about two inches wide. This was an iron post and we are of the opinion that it would be indulging a very violent presumption to believe that this character of dent on this iron post was made by one's head striking against it. Plaintiff also introduced the cap worn by deceased at the time of his death, which, it is claimed, shows a dent on its visor. The cap was attached to and made a part of the record and is now before us. An examination of this cap shows that its forepiece which projects down over the eyes is stiffened by some sort of card board, and the only indication we find on the cap is a slight loosening of this card board upon a small portion of its front piece. There is no breaking of the cloth covering the card board,

but just in one little piece the card board seems to be loosened. As to the weight of this testimony, it is sufficient to say, as before indicated, that there was no evidence to show when or how this slight loosening of the card board in the front piece of the cap was made, and in addition to this, the evidence clearly shows that it was the back part of the head that was crushed; hence, it would logically follow, unless he had the front part of this cap on the back part of his head, that the object which his head struck did not make a dent on the front part of the cap. The contention that the dent or loosening of the card board on the front part of the cap was made by the striking of this iron post, stands upon the same ground as the contention as to there being a ladder on the side of the car, and that the deceased went down on the ladder to examine the hot box; it is purely speculation and conjecture.

No one can read the disclosures of the evidence in the record and reach any satisfactory conclusion as to how this accident occurred. There is nothing to show how deceased fell from this train, nor on what part of the train he was at the time he fell. As is suggested by learned counsel for respondent, in order to reach the car which was affected by the hot box he had to walk over nearly ten cars, and in doing that he may have slipped or stumbled while walking on a car and struck his head on the car and fell off. But this, also, is mere conjecture and speculation, but equally as tenable as the conjecture that he was down on the ladder and struck this particular iron post. There is no substantial evidence to support the theory of the plaintiff in this case.

Manifestly plaintiff's case rests upon mere presumption. In fact it is sought to recover in this action by building one presumption upon another.

In Yarnell v. Railroad, 113 Mo. l. c. 580, it was clearly stated by this court that it was not allowable to

build one presumption upon another and thus make a cause of action, and that negligence cannot be assumed by the mere fact of an accident and an injury, citing in support of the announcement of this doctrine, 1 Shearman & Redfield on Negligence (4 Ed.), sec. 59. In announcing the final conclusion in that case it was ruled that it was quite legitimate, when facts are admitted or proven, to draw from them such reasonable inferences as will be sufficient to sustain a verdict; but without this basis of fact a presumption has no office to perform, citing Railroad v. Henrice, 92 Pa. St. 431; Railroad v. State to use, 54 Md. 113; Sorenson, Admr., v. Paper & Pulp Co., 56 Wis. 338. See also Wintuska's Adm'r v. Railroad, 20 S. W. 819.

In State v. Lackland, 136 Mo. 26, the authorities upon the subject of presumptive evidence and building one presumption upon another, were thoroughly and exhaustively reviewed by this court, and after such review the rule as announced in the last case cited was strictly adhered to, and it was expressly held that "a presumption of any fact is, properly, an inference of that fact from other facts that are known," and that presumptions in order to be available in the proof of a cause of action must rest on established facts, and not upon other presumptions; citing Richmond v. Aiken, 25 Vt. 324; Pennington's Ex'rs v. Yell, 11 Ark. 212; O'Gara v. Eisenlohr, 38 N. Y. 296; Railroad v. Henrice, 92 Pa. St. 431; Yarnell v. Railroad, 113 Mo. 570.

The cause of action, as alleged in the petition, charges specifically the acts of negligence and the manner in which this accident occurred. As we have heretofore stated, there is no proof that it occurred in the manner as charged in the petition, and manifestly it was not known how this accident occurred, and if we were to indulge in conjecture and speculation, one can account for it upon some other theory equally as prob-

able as the one alleged in the petition. But as was ruled in the case of Swartz v. Frank, 183 Mo. 438, the law requires proof of the facts constituting the cause of action, and does not indulge in speculations.

Our attention is directed to the case of Murphy v. Wabash Ry. Co., 115 Mo. 111. It is this case upon which the plaintiff chiefly relies; but a careful examination of that case will demonstrate that the facts as developed upon the trial were essentially different from the proof in the case at bar. In that case it will be noted that there was substantial proof as to how the accident occurred. In this case it is a mere speculation or conjecture as to how it occurred. This is a sufficient distinguishing of the two cases to show that the Murphy case furnishes no support to the case at bar. But aside from that there is another material difference in the two cases. In the Murphy case the injury resulted from the negligence of the defendant in erecting and maintaining a fence on its right of way so close to its track as to imperil the lives and limbs of its servants engaged in operating trains; by reason of this fact the engineer operating the train, while tightening some of the nuts on the outside of his engine, was injured by coming in contact with this fence. There was as to these facts substantial proof offered. It was not a mere conjecture or speculation as to how this engineer received his injuries, but the facts were shown in evidence tending to prove the allegation in the petition. The court, in its final conclusion, in discussing the question as to assumption of risks, said: ''It is clear that the plaintiff did not assume any risk arising from the fact that this fence was too close to the track, unless he knew the fence was close enough to the track to strike his body, and we have seen that this court cannot say that he had such knowledge.''

In the case at bar the record discloses that plaintiff's husband had been an employee of the defendant

as a brakeman on freight trains running between Moberly and Kansas City, Missouri, for a period of about five years. Manifestly plaintiff's husband could not have worked as brakeman for the defendant along its line of road, as heretofore indicated, which required switching of cars, manipulating the switch under and near where these posts were located, without observing and thereby obtaining full knowledge that these posts were close to the track. However, we deem it unnecessary to discuss that phase of the case, for our conclusions are predicated upon the broad proposition that the evidence fails to show that the death of plaintiff's husband resulted through the negligence of the defendant, and in the manner alleged in the petition.

In arriving at the conclusions in this case we are not unmindful of the authorities cited by appellant. While we have not reviewed those authorities it by no means follows that we have not carefully examined them. In our opinion they in no way conflict with the conclusions as reached by this court as herein indicated.

We see no necessity for pursuing this subject further. Our views upon the legal proposition disclosed by the record are fully indicated, which results in the conclusion that the action of the trial court in giving the instruction requested in the nature of a demurrer to the evidence was entirely proper, and the judgment of the trial court should be affirmed, and it is so ordered.

All concur.