VERONICA COLLINS, Respondent, v. STAR PAPER MILL COMPANY, Appellant.

Kansas City Court of Appeals, April 4, 1910.

1. **MASTER AND SERVANT: Negligence: Death: Circumstantial Evidence: Presumptions: Inference on Inference.** The tender of certain paper cleaning vats in a paper-producing establishment was found dead with his body attached to an unguarded shaft above where he worked. There was sufficient circumstantial evidence in the case to support a finding that he was killed while oiling the shaft, and that such oiling was a part of his duties.

2. ————: ————: ————. In order to sustain an issue of fact on circumstantial evidence it is necessary to produce a chain of connected circumstances or facts that point to the main fact in issue, and one inference may not be based on another inference; but in this case each inference was based on facts, and not on another inference.

3. ————: ————: ————. When facts are established it is legitimate to draw reasonable inferences therefrom.

4. **MASTER AND SERVANT: Foreman: Evidence of Authority.** One of the ways of showing the authority of a particular foreman in a particular place or piece of work is by proof that he is accustomed to giving directions to workmen engaged in such work.

5. **DEATH: Contributory Negligence: Presumption: Instruction.** Where there was no evidence as to whether deceased was or was not in the exercise of ordinary care, the law presumes he was in the exercise of ordinary care, and there was no error in giving an instruction that deceased was presumed to be in the exercise of due care.

6. ————: **Unguarded Shafts: Statute: Glaring and Obvious Risks: Instructions.** Where the master fails to exercise ordinary care with respect to guarding his machinery as required by the statute, the fact that the dangers to be apprehended from such failure of duty are obvious will not excuse him from liability on the ground of assumed risk, and the court properly refused defendant's seventh instruction, that if deceased knew of the danger, and if an ordinarily prudent person would not have continued to work near the shafting under such circumstances, then the plaintiff could not recover.

7. ————: ————: ————. Ordinarily the servant impliedly assumes by his contract of hire such risks as are incident to his employment; but this rule has no application where the master disobeys the provisions of the statute requiring him to guard dangerous machinery for the protection of his servants. If the law were otherwise the very purpose of the statute would be defeated, because, as the danger is always obvious, the servant would in that event always assume the risk.

8. **EVIDENCE: Mortality Tables.** The court did not err in permitting plaintiff to prove the expectancy of life of deceased by reading the American Experience Mortality Table as contained in section 5968, Revised Statutes 1879. There was some evidence that deceased was a person of ordinarily good health and this would justify the jury in finding that he was of the class covered by the mortality table.

9. **WITNESSES: Transaction With Person Since Deceased.** The court properly excluded evidence that defendant's foreman had given deceased certain instructions with reference to his duties.

Appeal from Jackson Circuit Court.—*Hon. W. O. Thomas,* Judge.

AFFIRMED.

*Douglass & Watson* and *Warner, Dean, McLeod & Timmonds* for appellant.

(1) The court erred in excluding evidence as to the directions given to deceased by his foreman. Brim v. Fleming, 135 Mo. 606; Bank v. Rood, 132 Mo. 261; Stanton v. Ryan, 41 Mo. 510; Leahy v. Simpson, 60 Mo. 83; Baer v. Paff, 44 Mo. App. 35; Clark v. Thias, 173 Mo. 645. (2) The court erred in admitting in evidence mortality tables taken from the statutes of 1879. The omission of that table of figures from the revision of 1889, and the substitution of the actuaries' or combined experience table, was equivalent to a repeal of so much of that law as was so omitted. R. S. 1889, sec. 6606; Blodgett v. Shafer, 94 Mo. 653; Bird v. Sellard, 113 Mo. 580; Merriwether v. Love, 167 Mo. 514; Berkshire v. Railroad, 28 Mo. App. 225; Young v. Railroad, 33 Mo. App. 509. (3) If these statutes were in force, they should not have been read to the jury. R. S. 1899, sec. 748; Sparf v. United States, 156 U. S. 51; Woods v. Campbell, 110 Mo. 572. (4) The court erred in refusing defendant's seventh instruction on the issue of the contributory negligence of deceased. Rigsby v. Supply Co., 115 Mo. App. 297; Lang v. Bolt & Nut Co., 131 Mo. App. 146; Holmes v. Brandenbaugh, 172 Mo. 53; Shepherd v. Transit Co., 189 Mo. 362; Adolff v. Baking Co., 100 Mo. App. 199; Browning v. Kasten, 107 Mo. App. 59; McKee v. Railroad, 96 Mo. App. 671.

*Botsford, Deatherage & Creason* for respondent.

(1) It was the duty of the defendant to safely and securely guard its shafting, gearing, etc., in its manufacturing establishment, the same being dangerous to its employees while engaged in their ordinary duties. R. S. 1899, sec. 6433; Lore v. Manufacturing Co., 160

Mo. 608; Bair v. Heibel, 103 Mo. App. 623; Stafford v. Adams, 113 Mo. App. 717. (2) Where a master fails to safely and securely guard the shafting, gearing, etc., as required by statute, the servant does not assume the risk thereof. Bair v. Heibel, 103 Mo. App. 623; Stafford v. Adams, 113 Mo. App. 717; Curtis v. Mc-Nair, 173 Mo. 279; Parks v. Railway, 178 Mo. 108. (3) It is negligence *per se* for the owner of a factory to fail to so guard said shafting, gearing, etc. Stafford v. Adams, 113 Mo. App. 717; Colliott v. Mfg. Co., 71 Mo. App. 163; Lore v. Mfg. Co., 160 Mo. 608. (4) In the absence of evidence to the contrary, deceased is presumed to have been in the exercise of ordinary care at the time of his injury. (5) Contributory negligence is a defense, and the burden is upon the defendant to establish that defense with proof. Miller v. Railway, 164 Mo. 198; Bueshing v. Light Co., 73 Mo. 219; Fairgrave v. Moberley, 29 Mo. App. 155; Smiley v. Railway, 160 Mo. 635. (6) In a suit under sections 2865-6, Revised Statutes 1899, for the death of a person, caused by a wrongful act, neglect or default of another, the expectancy of life may be considered by the jury in estimating the damages. O'Mellia v. Railroad, 115 Mo. 205; Jones v. Railroad, 178 Mo. 528. (7) And the American experience mortality table is admissible in evidence to show probable duration of life. Boettger v. Architectural Co., 136 Mo. 531; Corbitt v. Mooney, 84 Mo. App. 645. (8) The testimony of Thomas Pearson, defendant's superintendent and agent, with respect to the contract of employment between himself as agent for defendant and Joseph Collins, was properly excluded. Williams v. Edwards, 94 Mo. 447; Hollmann v. Lange, 143 Mo. 107; Nelson v. Railroad, 66 Mo. App. 652; Henry v. Buddecke, 81 Mo. App. 365; Donnell v. Jung, 81 Mo. App. 581.

*O. C. Mosman,* of counsel for appellant, on motion for rehearing.

BROADDUS, P. J.—The plaintiff seeks to recover damages for the death of her husband alleged to have been caused by the negligence of the defendant.

The defendant corporation was engaged in the manufacture of paper in Kansas City, Missouri. Its plant consisted of several disconnected buildings. The building in which plaintiff's husband received his death was about two hundred and fifty feet from the other buildings, and consisted of three stories. At the time he was in defendant's employ and engaged in work in the first story of said building. There were five round tanks in the room, each about twelve feet high. and twelve feet in diameter, two of which were situated on the south side and three on the north side of the room. The two on the south side standing on a line east and west and about eighteen inches apart. They were used for the purpose of cleaning old printed paper, taking the ink stain out of it, so that it might be used in the making of white printing paper. The tanks were filled with hot water. The operating power was situated in another building and was connected with a line shaft which was attached to the south side of the building near the ceiling. The paper in the tanks was washed by the water flowing in and out and was stirred by wooden arms attached to the line shaft. There were steps leading up to within about two and a half feet of the tops of the tanks and a kind of platform of unequal width extending between the tanks. The main purpose of having these steps and platforms was to enable the person in charge to ascend to and be in a position to look into the tanks to see if they contained the proper quantity of water. There were pieces of lumber laid crosswise over these tanks.

143 App—22

The room was twenty feet in height and the tanks were situated within about thirteen inches of the south wall. The line shaft was about sixteen inches from the ceiling and about the same distance from the wall. There was a window in the south wall opposite the tanks. A person standing on the platform between the tanks was not within reach of the shaft, but standing on the timbers laid across the tops of the tanks would be within its reach.

Chains ran down from the shafting into the center of each tank. These chains worked on sprocket wheels attached to the shaft which operated the cogwheels in the center of the tanks. The machinery and shafting had places on them used for the purpose of oiling. The shafting could have been but was not guarded.

The deceased was thirty-five years of age. He was the night man in charge of the tanks. No other person worked with him, or in the same room. He was found in the morning about seven o'clock dead with his body attached to the shaft. It was evident that his clothing or some part of his body had caught on the shaft, and that he was thrashed by its revolutions against the south wall of the building and by that means killed. An oiling can and some of his fingers were found under the window on the outside of the building.

It was admitted that a part of his duties was to look after the tanks and see that they were supplied with water and did not overflow. In the performance of this duty it was only necessary for him to go up on the platform in which position he would not be within reach of the shaft. There was a controversy whether it was any part of his duty to do the oiling. There was evidence upon the part of plaintiff that while deceased was in charge in the performance of his admitted duty, he would go up and oil the shaft and that he constantly carried the oiler in his hand. In order to do the work he would necessarily have to stand upon the timber laid across the tanks. And the infer-

ence is almost unavoidable from the fact, that the oiler with his fingers was found outside of the window, that he was oiling the shaft when he was caught by it.

The evidence of defendant's superintendent was that the only duty of deceased was to look after the tanks, and to see that they were supplied with water and did not overflow. On cross-examination he however stated that as the machinery was new it required more oiling than old machinery or machinery that had worn smooth. The defendant also showed that they had a night and a day oiler whose duty it was to oil the machinery, and that the machinery required oiling twice a day. On the contrary it does not appear that the night oilers were ever seen in the room with deceased, by a woman friend of plaintiff who often went with her on visits to deceased while he was on duty. The defendant offered to prove by the superintendent what instructions he gave to deceased as to his duties. Upon objection of plaintiff the witness was not allowed to answer.

The plaintiff introduced and read to the jury over defendant's objection section 5968, Revised Statutes 1879, providing for the valuation of life policies by the American experience mortality table.

The plaintiff seeks to recover on the ground of the alleged negligence of the defendant to guard the shafting as provided by section 6433, Revised Statutes 1899.

The plaintiff recovered judgment for $5500, and defendant appealed.

It is contended by defendant that under the evidence plaintiff was not entitled to recover, on the ground that it was not shown that deceased was in the performance of his duty when he was killed; as it must be conceded that if deceased's only duty was to look after the tanks, he was not in the performance of such duty while oiling the shaft. But we are not convinced that deceased was acting outside of the scope of his duties while he was engaged in oiling the machinery, not-

withstanding the statement of defendant's superintendent that he had no such duty to perform. When we come to consider certain facts to the effect that he was habitually seen to do the oiling and that he constantly carried the oiler in his hand while engaged around the tanks and that no other person was ever seen to do the oiling, we believe that it would be reasonable to infer that it was a part of his duty to do so, and that such duty was expected from him. And we are impressed with the conviction that the deceased's constant watchfulness over the condition of the machinery must have been instigated by a knowledge on his part that he was expected to do so, and the failure of the performance of that duty by any other employee goes to show that it was expected that he would do it. It was a fact, in the absence of positive evidence, competent for plaintiff to prove by circumstances like any other fact.

But it is contended by defendant that in order to maintain the verdict "the court must base an inference upon an inference, that is, the court must infer from the testimony that it was a part of Collins' duties to be in and about . . . the shafting . . . and to watch and keep the same oiled, and must further infer that he was in the performance of those duties. Hence it is basing an inference upon an inference." [Citing Swearingen v. Wabash R. Co., 221 Mo. 644.] We do not think so. In order to sustain an issue of fact on circumstantial evidence it is necessary to produce a chain of connected circumstances or facts that point to the main fact in issue. If defendant's contention be true the fact that one circumstance follows in connection with the preceding, the inference to be derived is basing an inference upon an inference. Here we have certain facts going to show that it was a part of the duty of deceased to oil the machinery. The circumstances go to establish the fact. In the second place the facts go to show that deceased was oiling the shaft, thus the establishment of another fact. It is true the es-

tablishment of the two things, the duty of the deceased to oil the shaft, and that he was oiling it, are inferences, but each drawn from independent facts. It is not inferred that deceased was oiling the shaft merely because it was his duty to do so, but because the facts proven tend to show that he was actually doing so. The rule is stated to be that when facts are admitted or proven it is legitimate to draw from them such reasonable inferences as will be sufficient to sustain a verdict. [Yarnell v. Ry. Co., 113 Mo. 1. c. 580.] In State v. Lockland, 136 Mo. 26, it is held that "a presumption of any fact is properly an inference of that fact from other facts that are known." A presumption "to be available in proof of a cause of action must rest on established facts, and not upon other presumptions." [Swearingen v. Wabash R. Co., 221 Mo. 644.]

A question is raised as to the action of the court in refusing to allow defendant's superintendent to state what instructions he gave deceased as to his duties. The question was, "Now state to the jury what instructions and directions were given to him as to what his duties were in his employment." The witness had previously stated that the directions were given by himself. It is held that "one who contracts with the authorized agent of a corporation is not a competent witness as to such contract, or the admissions or declarations of the agent after the latter's death." [Williams v. Edwards, 94 Mo. 447.] And the principle is the same as announced in Hollmann v. Lange, 143 Mo. 1. c. 107, and Nelson v. Railroad Co., 66 Mo. App. 647. This rule governs the question.

Defendant insists that there was error in the action of the court in permitting plaintiff to read to the jury section 5968, Revised Statutes 1879, containing The American Experience Table, which was admitted for the purpose of showing the life expectancy of the deceased at the time of his death and that of plaintiff at that time. One objection was that the statute was

not in force either at the time of the death of plaintiff's husband, or at the time of the trial. The act was passed to provide a rule of action for the state superintendent of insurance and whether it was in force at the time of the trial is immaterial as it did not purport to be a rule governing any other subject. But we find this provision of the statute in both the revisions of 1889 and 1899. The Supreme Court however has held that "The American Experience Table" is competent evidence "for the purpose of governing the expectancy of the life of the deceased; such table being recognized by Revised Statutes 1889, section 5841." [Boettger v. Iron Co., 136 Mo. 531.] "The reasonable expectancy of decedent's life as shown by the testimony of physicians and by mortality tables is . . . a proper fact to be considered by the jury in estimating the damages." [O'Mellia v. Ry. Co., 115 Mo. 205.]

The defendant has made an extensive argument to avoid the force of these holdings of the Supreme Court and cited cases from other States in support of such argument, one in particular a Pennsylvania case where it is said that: "The court says to the jury that the life of a young man of this age, according to the tables, is estimated at forty to forty-five years, and that they could take that as a means of estimation of what would compensate him for his loss. The fair inference that the jury might draw from this statement is that the tables not only were some evidence of plaintiff's expectancy, but that they *established it*. The tables were not entitled to such weight, unless by precedent proof he had brought himself within the class of selected tables tabulated, and this he failed to do." [Kerrigan v. R. R. Co., 194 Pa. St. 106; 44 Atl. l. c. 1071.] The decision goes to the extent that such tables as evidence of the expectancy of life are not conclusive; "their value as such depending greatly on the similarity of the life in question to the conditions and habits of those tabulated in the tables." The evidence here was

that the deceased was thirty-five years of age and that he had been a common laborer a few weeks prior to his engaging in the trying night service in which he ended his life. It is true that this was not a very definite showing of his physical condition but it was some evidence from which the jury might infer that he was a person of ordinarily good health. The court did not charge the jury as to the probative force they should give the evidence and they were left to exercise their discretion in that respect. It is true as said in the Pennsylvania case, that the jury was liable to consider the table conclusive as to the life expectancy of deceased, but the conclusion would be justifiable if the proof brought him within the class mentioned in the table, that is, a person of good health.

Plaintiff in rebuttal introduced a witness by the name of Chowning and asked him if he had heard any instructions given to deceased about oiling the machinery. This was objected to by defendant and no answer was given but the question was followed by another, viz.: "Who was the man you heard, if you did hear, give any instructions to Joe Collins about oiling the machinery?" Defendant also objected to this question. The answer was: "Well, one of the beater room foreman—I heard him speak to him." Q. "Did their duties take them into the room where Joe Collins was employed, this new part?" A. "Certainly they were attending to that part." The argument to support the objection to the competency of this evidence is that there was no showing that the beater foreman had any authority to give such directions. There was no positive evidence to that effect. But it is generally conceded that a foreman who has charge of any particular work is assumed to have authority to give directions to workmen engaged in such work. It is one way of proving authority in the absence of which it would often be difficult to establish that fact and sometimes impossible.

Objection is made to instruction numbered one given for plaintiff, but at most it is purely technical and could not have moved to the prejudice of defendant.

The court gave instruction numbered two over the objections of defendant. It reads as follows:

"The court instructs the jury that in the absence of any evidence to the contrary said Joseph Collins is presumed to have been in the exercise of ordinary care and to have been free from contributory negligence, at and prior to his death; that the burden of proving such negligence, if any, on his part devolves upon defendant, which has pleaded and set up such contributory negligence as a defense, and unless that defense or the fact of contributory negligence, if any, on his part has been proven by a preponderance of all the credible evidence in the case, then you should find that issue in favor of the plaintiff."

The objection is that the jury are told that deceased was presumed to be free from contributory negligence at and prior to his death, whereas it is insisted that it was a question of fact for the jury. This objection is not well founded as there was no evidence either one way or the other that deceased's death was the result of his own negligence, and in the absence of such evidence the law justly presumes that he was in the exercise of ordinary care. [Moberly v. Railway Co., 98 Mo. 183; Weller v. R. R. Co., 164 Mo. 180; Smiley v. R. R. Co., 160 Mo. 629.] There was evidence it is true that deceased could have stopped the machinery while he was oiling it. Yet it does not appear that it was necessary, or that it was usual and customary to do so. In the absence of such showing the presumption is that he was exercising due care. The same objection is made to instruction numbered seven.

The court refused instruction numbered seven for defendant. It reads as follows:

"The court instructs the jury that even though you shall believe from the evidence that the shafting in question was entirely unguarded—yet, if you further find from the evidence that the fact that said shaft was unguarded was known to Collins, and if you further believe from the evidence that the danger of working near the same while in operation was open and obvious, and was known to Collins, and was so obvious and imminent that a person of ordinary prudence would not have continued to work near said shafting under such circumstances, then and in that case your verdict must be in favor of the defendant."

It is held that where the master fails to exercise ordinary care with respect to guarding his machinery as required by the statute, the fact that the danger to be apprehended from such failure of duty, is obvious, will not excuse him from liability on the ground of assumed risk. [Stafford v. Adams, 113 Mo. App. 717; Bair v. Heibel, 103 Mo. App. 621; Lore v. American Mfg. Co., 160 Mo. 608.]

Ordinarily the servant impliedly assumes by his contract of hire such risks as are incident to the employment. [Rigsby v. Oil Supply Co., 115 Mo. App. 297.] But it is obvious this rule has no application where the master disobeys the provisions of the statute requiring him to guard dangerous machinery for the protection of his servants. If the law was as defendant contends it is, the very purpose of the statute would be defeated because the danger being always obvious the servant assumes the risk.

The assigned error as to other instructions offered by defendant and refused by the court are not well taken.

Finding no material error in the trial the cause is affirmed. All concur.