## KOKESCH v. EXCELSIOR POWDER MFG. CO.*

(Circuit Court of Appeals, Eighth Circuit. December 17, 1926.)

No. 7416.

1. **Master and servant** ⬥121(6)—**Guard furnished for machine must be suitable for performance of work required (Rev. St. Mo. 1919, § 6787).**

Under Rev. St. Mo. 1919, § 6787, requiring all power-drawn circular saws to be provided with safety guards, it is the duty of the master, not only to furnish a guard which affords adequate protection, but to furnish one which does not so interfere with the use of the instrumentality sought to be guarded as to make it unsuitable for the work required to be done upon it.

2. **Master and servant** ⬥121(6)—**Master, required by statute to guard machinery, must provide guard which does not interfere with operation of machine (Rev. St. Mo. 1919, § 6786, 6787).**

Where a master, required to guard a machine, uses a guard which will not permit the workmen to do the work they are required to do on it unless they remove the guard, he has not fulfilled his duty of furnishing suitable and adequate protection, under Rev. St. Mo. 1919, §§ 6786, 6787.

3. **Master and servant** ⬥286(22)—**Whether saw guard was adequate held for jury (Rev. St. Mo. 1919, §§ 6786, 6787).**

Whether the guard for a circular saw was adequate, under Rev. St. Mo. 1919, §§ 6786, 6787, *held*, under the evidence, a question for the jury.

In Error to the District Court of the United States for the Western District of Missouri; Albert L. Reeves, Judge.

Action at law by Charles Kokesch against the Excelsior Powder Manufacturing Company. Judgment for defendant, and plaintiff brings error. Reversed.

Harry G. Kyle, of Kansas City, Mo. (Walter A. Raymond, of Kansas City, Mo., on the brief), for plaintiff in error.

Ellison A. Neel, of Kansas City, Mo. (A. L. Cooper and Whitson Rogers, both of Kansas City, Mo., on the brief), for defendant in error.

Before BOOTH, Circuit Judge, and PHILLIPS and JOHN B. SANBORN, District Judges.

JOHN B. SANBORN, District Judge. Charles Kokesch sued the Excelsior Powder Manufacturing Company to recover damages for personal injuries which he claimed to have sustained as a result of negligence on its part. The accident happened on April 21, 1924. For nine or ten years prior to that time the plaintiff had worked for the company. He had been a stationary engineer, in charge of the engines and boilers, up to about 11 months before the accident. At that time he was given a position which required him to make repairs around the plant. In the shop in which he did his work was a circular, power-driven ripsaw 12 inches in diameter. There is some question as to whether the plaintiff had used the saw prior to the time he became a repairman. It is not important whether he did or not. He had had experience as a mechanic, and was familiar with the saw and its operation at the time the accident happened.

The saw was fastened to a shaft located underneath a wooden table, which had a top about 4 feet square. There was a groove in the center of the table, through which the saw blade protruded some 4½ inches. The table was waist high. The saw was propelled by electric power transmitted from a horizontal shaft above the table. The table top was of pine boards. When in operation, the saw revolved at a speed of about a thousand revolutions a minute.

Some time prior to the happening of this accident, one of the employees in the shop had been instructed to make a cover or guard for the saw. This consisted of a piece of maple wood 20 to 22 inches long, 2½ inches thick, and about 8 inches wide. It was fastened by a bolt to an upright steel band that was 3½ inches wide and one-eighth of an inch thick, set upright edgewise toward and behind the saw, with its bottom bent at right angles, mortised into the table, and fastened with four bolts. The wooden guard had an elbow, and, after it had been fastened to the steel upright, it was brought down over the moving saw, so that the saw made its own groove in the guard. The final result was that, when the guard was down, it covered that portion of the saw above the top of the table completely, and the lower edge of the guard was flush with the table top; the front end of the guard extending several inches beyond the front edge of the saw. Boards could be sawed by shoving them against the guard, the front edge of which was curved inward at the bottom. The guard would then rise, so as to permit the board to come in contact with the blade of the saw. As the board was pushed through, the guard would automatically rise, and, when the board had reached the heel of the guard, the front would be further from the surface of the table than the heel. The saw was used sometimes with the guard and sometimes without the guard, which could be raised and turned back away from the saw. When it was necessary to follow a line upon a board, that could not readily be done without raising

*Rehearing denied February 18, 1927.

the guard, because it was 2½ inches wide, and the front of it extended beyond the front of the saw, so that the operator was unable to tell accurately whether the blade of the saw was upon the line or not.

On the 21st day of April, 1924, Kokesch was making what are referred to in the record as "buttons," small strips of hard wood used to fasten the openings of powder barrels in which the powder was revolved in the process of manufacture. He was ripping strips from a board some 16 or 18 inches long and 2½ inches in width. He had laid back the guard, and was holding this piece of wood against the saw with his left hand, and pushing it with his right hand, or with another piece of wood held in his right hand. He claims that in some way the piece of wood he was holding turned up or was jerked up by the saw, and the index finger of his left hand was practically severed, and the saw cut to the bone of his thumb.

On the trial, when the plaintiff rested, the defendant interposed a demurrer to the evidence and moved for a directed verdict. The court sustained the demurrer and directed the jury to bring in a verdict in favor of the defendant. This is assigned as error.

[1] The negligence of the defendant, as alleged by the plaintiff, is:

"That it negligently placed and maintained said saw in such a position in its said repair shop as to be dangerous to plaintiff and other persons working therein and thereabout, while plaintiff and said other persons were engaged in their ordinary duties, and although it was possible to safely and securely guard said saw without decreasing its efficiency or interfering with its operation, the defendant negligently failed to do so, in direct violation of section 6786 and 6787, Revised Statutes 1919, as a direct result of which plaintiff suffered the above described injuries."

The pertinent parts of the sections of the Revised Statutes of Missouri referred to are as follows:

Section 6786: "The belting, shafting, machines, machinery, gearing and drums in all manufacturing, mechanical and other establishments in this state, when so placed as to be dangerous to persons employed therein or thereabout while engaged in their ordinary duties, shall be safely and securely guarded when possible; if not possible, then notice of its danger shall be conspicuously posted in such establishments."

Section 6787: "All power-driven circular saws must be provided with safety guards which raise and lower automatically for various thicknesses of material, and must also be provided with a kick-back dog to prevent the board binding on the saw and flying back."

Under the decisions of the courts of Missouri, the defense of assumption of risk is not available to the defendant in this case. Columbia Box Co. v. Saucier (C. C. A.) 213 F. 310; citing: Durrant v. Mining Co., 97 Mo. 62, 10 S. W. 484; Lore v. American Mfg. Co., 160 Mo. 608, 61 S. W. 678; Butz v. Construction Co., 199 Mo. 279, 286, 97 S. W. 895; Huss v. Heydt Bakery Co., 210 Mo. 44, 108 S. W. 63; Simpson v. Witte Iron Works Co., 249 Mo. 376, 155 S. W. 810; Bair v. Heibel, 103 Mo. App. 621, 77 S. W. 1017; Stafford v. Adams, 113 Mo. App. 717, 88 S. W. 1130; Lohmeyer v. St. Louis Cordage Co., 137 Mo. App. 624, 119 S. W. 49; Collins v. Star Paper Mill Co., 143 Mo. App. 333, 127 S. W. 641; Austin v. Bluff City Shoe Co., 176 Mo. App. 546, 158 S. W. 709.

The only questions in this case, then, upon the trial, were whether the plaintiff's injuries were the result of negligence on the part of the powder company, and whether the plaintiff himself was guilty of contributory negligence. The court, in directing a verdict, apparently proceeded upon the theory that the powder company had provided a guard of a sort, and, the plaintiff having failed to use it, there was either no negligence on the part of the powder company, or the plaintiff was guilty of contributory negligence which would prevent his recovery.

Under statutes like those here involved, it is not only the duty of the master to furnish a guard which affords adequate protection, but to furnish one which does not so interfere with the use of the instrumentality sought to be guarded as to make it unsuitable for the work required to be done upon it.

In the case of Gross v. Eagle Wheel Mfg. Co., 252 Pa. 361, 97 A. 457, the court said:

" 'Properly guarded' means suitably guarded, and a guard that interferes with the operating of the machine and renders it useless for the purpose for which it is intended is not a proper protection within the meaning of the act of 1905."

In the case of Jensen v. Shaw Show Case Co., 76 Wash. 419, 136 P. 698, it was held that where there was conflicting evidence as to whether a guard was cumbersome and inadequate and unsuitable for the work which the injured workman was doing, it was for the jury to say whether the employer had complied with the duty imposed by the statute in furnishing a suitable guard. See, also, Binger v. Read, 101 Kan. 303, 165 P. 821; Nodland v. Kreutzer & Wasem, 184

Iowa, 476, 168 N. W. 889. In the last case appears the following language:

"Of course, the law does not provide the kind of guard required, nor was appellant required to use any particular kind; but, if a guard could reasonably be so constructed and permanently attached and held in position as to at all times guard the saw and protect the operator from injury, it was the duty of appellant to see that the saw was thus guarded."

[2] Where a master required to guard a machine uses a guard which will not permit the workmen to do the work which they are required to do upon it unless they remove the guard, he has not fulfilled his duty of furnishing suitable and adequate protection. If the guard in this case was the sort of guard referred to by the statute—in other words, if it was adequate and suitable—then the defendant was not negligent, and the accident was due to the negligence of Kokesch himself in failing to use it; but if, as he claims, it was inadequate and unsuitable because it did not permit him to do the kind of work which he was doing and was required to do, then the questions of the negligence of the powder company and the contributory negligence of Kokesch were questions of fact for the jury.

[3] Kokesch's complaint against the guard, as shown by the testimony, was that with it down he could not see to cut a straight line; that he could not see the line marked on the work; that he could not see the saw when he started his work; that the weight of the block pressing upon the board interfered with the work; that, as the board passed through the saw, the block was raised in front, so that his hands could come in contact with the saw.

Upon the evidence at the close of the plaintiff's case, we think that reasonable minds might well have differed as to the adequacy and suitability of this guard, and as to the negligence of Kokesch in failing to use it. For that reason, the judgment of the lower court is reversed, and a new trial granted.