TIMOTHY AUSTIN, Respondent, v. BLUFF CITY SHOE COMPANY, Appellant.

St. Louis Court of Appeals.    Argued and Submitted June 3, 1913. Opinion Filed July 5, 1913.

1. APPELLATE PRACTICE: Defective Abstract: Defects Cured by Amended Abstract. Where appellant's original abstract did not distinguish between the record proper and matters of exception and was deficient in other respects, but an amended abstract, which was sufficient for all practical purposes, was filed. *held* that respondent's complaints concerning the original abstract would be disregarded, although the amended abstract was filed without formal leave of court.

2. ———: ———: Omissions Cured by Respondent's Abstract. Where appellant's abstract does not set out all the evidence, but that fault is corrected by respondent's abstract, the cause will be considered on both abstracts.

3. ———: Assignment of Errors: Reply Brief. A point which is not assigned as error in the original brief filed by appellant and is raised for the first time in the reply brief will not be considered.

4. MASTER AND SERVANT: Injury to Servant: Unguarded Machinery: Statutory and Common Law Action: Consistency: Pleading. In an action by an employee for injuries sustained from using unguarded machinery, a count predicated on the master's failure to guard the machinery, as required by Sec. 7828, R. S. 1909, is not inconsistent with a count bottomed on the master's violation of the common law duty to use ordinary care in furnishing the employee with a reasonably safe place to work, and hence the two causes of action may be united in the same petition.

5. PLEADING: Motion to Elect: Waiver by Pleading Over. By answering over, defendant waives his right to complain of the overruling of a motion to compel an election between inconsistent causes of action.

6. ———: ———: Denial of Motion: Curing Error. Even though the refusal of the trial court to require an election between two counts of a petition is erroneous, such error will be deemed harmless, where, at the close of the evidence, the court directed a verdict for defendant on one of the counts.

7. APPELLATE PRACTICE: Constitutional Question: Manner of Raising Question. A point involving the constitutionality of a statute will not be considered on appeal unless it was raised in the trial court at the first opportunity.

8. SUPREME COURT: Jurisdiction: Constitutional Question. Under the Constitution the Supreme Court has exclusive jurisdiction of all cases involving the construction of the Constitution.

9. MASTER AND SERVANT: Unguarded Machinery: Construction of Statute. Sec. 7828, R. S. 1909, providing that the belting, shafting, machines, machinery, gearing, and drums in all manufacturing, mechanical and other establishments, when so placed as to be dangerous to employees therein or thereabout, while engaged in their ordinary duties, shall be safely guarded, if possible, covers employees working at and with an unguarded machine, machinery, belts, shafts, etc., and also employees who are engaged in ordinary duties on the premises which necessitate their working in, around and about the machinery while it is in operation, even though they are not actually operating the machinery themselves.

10. ———: ———: ———. Sec. 7828, R. S. 1909, providing for the guarding of machinery, etc., in manufacturing, mechanical and other establishments, is highly remedial, and although it

changes the common law, it is to be liberally construed so as to conserve the safety of employees, which was the object the Legislature had in view.

11. **STATUTES: Humanitarian Statutes: Construction.** A highly remedial statute, which is designed to conserve the safety of persons coming within the scope of its operation should be given a liberal construction, notwithstanding it is in derogation of the common law.

12. **COURTS: Legislature: Functions.** The Legislature is the maker of the laws, the courts merely construe them; and it behooves the courts, while not lagging, to be conservative, and not to anticipate, by radical departures, action which they may think should be taken by the people, through their representatives in the Legislature.

13. **MASTER AND SERVANT: Injury to Servant: Unguarded Machinery: Assumption of Risk.** Assumption of the risk is no defense to an action by a servant for injuries received from a machine which was not guarded as required by Sec. 7828, R. S. 1909.

14. **———: ———: ———: Pleading: Instructions: Sufficiency of Evidence.** In an action by an employee for injuries caused by machinery which was not guarded as required by Sec. 7828, R. S. 1909, *held* that plaintiff's petition stated, and his evidence tended to prove, a case within the statute, justifying its submission to the jury; *held, further,* that the instructions correctly placed the case before the jury.

15. **———: ———: ———: Defenses.** In an action by a servant for injuries received from a machine which was not guarded as required by Sec. 7828, R. S. 1909, the fact that other manufacturers engaged in the same line of business did not guard their machines is no defense, since custom cannot prevail against a positive law.

16. **———: ———: ———: ———.** In an action by a servant for injuries received from a machine was not guarded as required by Sec. 7828, R. S. 1909, it is no defense for the master to show that the servant had used the machine a long time without injury; the purpose of the statute being to prevent the possibility of such an injury.

17. **CUSTOM: Operation and Effect.** In the absence of positive law, custom may make law, but no custom can prevail against a positive law.

18. **APPELLATE PRACTICE: Conclusiveness of Verdict.** A verdict supported by evidence is conclusive on the appellate court.

Appeal from Marion Circuit Court.—*Hon. William T. Ragland,* Judge.

AFFIRMED.

*A. E. Watson, B. F. Glahn, Geo. A. Mahan, A. R. Smith* and *Dulany Mahan* for appellant.

(1) The petition in this case is in two counts. The first count is based upon the statute for failure to properly guard and alleges that it was the duty of plaintiff to put a belt on, and while in the discharge of such duty he was injured. In the second count, plaintiff alleges that the defendant, in violation of its duty, failed to have a competent machinist or person to replace the belt on the pulley when it was necessary. These two counts are inconsistent and contradictory, and hence the court committed error in overruling the motion to require an election. Jordan v. Transit Co., 202 Mo. 426; Behen v. Railroad, 186 Mo. 430. It is a rule where a pleading is ambiguous it is to be taken most strongly in its interpretation against the pleader. State ex inf. v. Jockey Club, 200 Mo. 65. (2) Even if it should be considered that the law was constitutional and that the notice had been given, as required by statute, still plaintiff would have no standing in court. He has no just cause of action or complaint against the defendant and should not be allowed to recover. All of the evidence shows that the shafting and pulley complained of were located near the ceiling from nine to ten feet from the floor and for that reason did not come within the purview of the statute as has been expressly held by this court. Strode v. Box Co., 124 Mo. 515; Cement Co. v. Ins. Co., 162 N. Y. Supp. 1068; Lang v. Bolt & Nut Co., 131 Mo. App. 146; Lohmeyer v. Cordage Co., 137 Mo. App. 630. The plaintiff put the belt on the pulleys as was customarily done by all the other employees in

the defendant's factory and in all other shoe factories. He put it on exactly as he had been putting it on for the two years that he had been working in that factory. He certainly has nothing to complain of and no right to recover. Barnett v. Paper Co., 149 Mo. 498; Collins v. Paper Co., 143 Mo. App. 333; Bradley v. Railroad, 138 Mo. 293; Doyle v. Trust Co., 140 Mo. 1; Mathis v. Stockyards Co., 185 Mo. 434; Nagle v. Gaslight Co., 152 S. W. 415. (3) The shafting and belting in the defendant's shoe manufacturing department is shown by the evidence, by all the evidence, to be of precisely the same character and kind and manufacture and located in the building and operated as is done by all other shoe manufacturing companies in the country. Absolutely like the great shoe manufacturing companies in St. Louis and Kansas City and other cities, no shoe factory guards the ceiling shafting and pulleys. This being the case there is no negligence on the part of the defendant. Smart v. Railroad, 164 Mo. App. 61; Wilkinson v. Bottling Co., 154 Mo. App. 563; Coin v. Lounge Co., 222 Mo. 506; Brans v. Car Co., 213 Mo. 698; Chrismer v. Telephone Co., 194 Mo. 189; Savernick v. Schwartzschild & Sulzberger Co., 141 Mo. App. 512; Steinhauser v. Spraul, 127 Mo. 562; Minneer v. Railroad, 167 Mo. 112. No inference of negligence can arise from evidence which shows that the implement used by a servant in the performance of his work was such as ordinarily used for like purposes by persons engaged in the same kind of business. Bond v. Railroad, 106 Mo. 429; Cunningham v. Journal Co., 95 Mo. App. 52; Mason v. Mining Co., 82 Mo. App. 370; O'Mellia v. Railroad, 115 Mo. 205; Hulin v. Railroad, 92 Mo. 440; Higgins v. Fanning & Co., 195 Pa. St. 599; Service v. Shoneman, 196 Pa. St. 63; Shadford v. Railroad, 111 Mich. 390; Bottling Co. v. Theiler, 59 Neb. 257; Domers v. Marchell, 178 Mass. 9. (4) Plaintiff's own testimony shows completely that he was not hurt as alleged in his petition. He plainly says

in his evidence that he was not hurt while trying to put on the belt but was caught by the lower end of the belt when he was jumping to the floor away from the shafting, pulley and belt. After trying three times to put on the belt he had ceased his efforts to put the belt on the pulley and was departing from the pulley and shafting by jumping to the floor from his position on the dieing out machine, and was caught while in the act of jumping to the floor, by the lower end of the belt at least nine feet from the shafting and pulley. The petition did not set this out as a cause of action and plaintiff cannot recover. He can only recover on the cause of action alleged in his petition. Chamlee v. Hotel Co., 155 Mo. App. 144; Nickett v. Railroad, 135 Mo. App. 669; Comption v. Railroad Co., 147 Mo. App. 414; Smith v. Pullman Co., 138 Mo. App. 238.

*Ben E. House* and *Hays & Heather* for respondent.

(1) In his first assignment appellant complains of error in the court's denial of his motion to elect as between counts. We submit that the court's action in that regard was proper, but that if it was improper it was harmless and it was waived by appellant. The motion did not lie because the counts were not inconsistent in their entire scope. They were based on one and the same injury. The one count declared upon negligence growing out of the disregard of the statute requiring certain shafting, etc., to be guarded, while the second was predicated upon the master's violation of his common law duty to use ordinary care to furnish the servant with a reasonably safe place of work. Brownell v. Railroad, 47 Mo. 239. Where the petition blends two causes of action, plaintiff's instructions do not have to cover both causes. They must cover the allegations that go to make up one cause of action and the other may be disregarded or abandoned. Robertson v. Railroad, 152 Mo. 382. It was

at appellant's request that the court gave his instruction No. 5, peremptorily requiring the jury to find for the defendant on the second count. But an entirely sufficient answer to the contention is this, that appellant waived his motion to elect by not standing on it and by answering over. Pryor v. Crum, 146 Mo. App. 623; Wyler v. Ratican, 150 Mo. App. 474; Hanson v. Neal, 215 Mo. 270; Roberts v. Neale, 134 Mo. App. 612; Summers v. Keller, 152 Mo. App. 626. (2) The rule is firmly established in this State that the servant never assumes a risk of injury created by the negligence of the master. And the fact that the servant is familiar not only with the defect suffered to exist by such negligence does not alter or affect that application of the rule, and where it appears that negligence of the master was a proximate cause of the injury, the only defense available is contributory negligence. Ludwig v. Cooperage Co., 156 Mo. App. 117; George v. Railroad, 225 Mo. 364; Jewell v. Bolt & Nut Co., 231 Mo. 176. And under the evidence in this cause there can be no doubt that the failure to guard was the proximate cause of the plaintiff's injury. Holman v. Iron Co., 152 Mo. App. 672. (3) The question of whether or not the injurious consequences that resulted from such negligence, such failure to guard, were such as ought reasonably to have been foreseen by appellant, was a question for the jury, was properly submitted, and the jury's finding is conclusive. Holman v. Iron Co., 152 Mo. App. 685; 29 Cyc. 639; Lohmeyer v. Cordage Co., 137 Mo. App. 630; Henderson v. Kansas City, 177 Mo. 477; Huss v. Bakery Co., 210 Mo. 44; Railroad v. Stout, 17 Wall. 663, 21 L. Ed. 745; Green v. Car & F. Co., 163 Ind. 135; Collins v. Paper Mill Co., 143 Mo. App. 333.

STATEMENT.—Action by respondent, plaintiff below, to recover damages for injuries received while in the employ of appellant, defendant below, in its shoe factory in the city of Hannibal. The cause was origi-

nally instituted in the Hannibal Court of Common Pleas and the venue changed by consent of parties from that court to the Marion Circuit Court.

The petition contains two counts, each of them beginning with an averment of the corporate character of the defendant, that it was the owner and operating, in the city of Hannibal, a factory for the manufacture of shoes, and that the plaintiff, on the 15th of August, 1910, and for a long time prior thereto, had been in the employ of the defendant, working in the shoe factory for wages. It is averred in the first count that in the factory there was a certain machine operated by plaintiff, known as a "dieing out" machine, used in shaping and cutting out shoe soles, the machine run by means of electric power communicated to it from a revolving horizontal shaft located above the machine and about twelve inches from the joists of the room in which the machine was placed, by means of a belt about four inches in width that ran over and around an iron pulley or drum about eighteen inches in diameter attached to and fixed upon the shaft and which also ran over and around an iron drum or pulley attached to the machine. It is further averred that on the above date there was, and for a long time prior thereto had been, a buckle or joint adjacent to the fixed pulley or drum thereto on this shaft, which buckle was about one and a half inches higher than the surface of the shaft. That at all the times mentioned in the petition it was the duty of the defendant company to safely and securely guard the belting, shafting, gearing and drums of its establishment, when possible, when they were so placed as to be dangerous to persons employed therein or thereabout while engaged in their ordinary duties, and that the defendant company negligently and carelessly failed to safely and securely guard the belting, shafting, gearing and drums of its establishment, the failure consisting in this: That the horizontal shaft and shaft pulley or

drum and belt and gearing and drum on the dieing out machine were, on the 15th of August, 1910, and for a long time prior thereto had been left wholly unguarded by the defendant and were dangerous to plaintiff and persons employed therein or thereabout while engaged in their ordinary duties, and that they could easily have been guarded so as to prevent injury to plaintiff and persons while engaged in the performance of their ordinary duties, all of which facts, it is averred, were well known, or by the exercise of proper care on its part could have been known, to the defendant on and for a long time prior to the 15th of August, 1910; that on the date last mentioned while plaintiff was in active discharge of the ordinary duties of his employment and in the exercise of ordinary care and prudence on his part, it became and was his duty to replace the belt on the shaft pulley, the belt having shortly theretofore been removed by defendant for the purpose of oiling the machinery. It is then averred that while plaintiff was endeavoring to replace the belt the latter escaped from the pulleys and in some manner was caught by the revolving shaft or by the buckle or joint thereon adjacent to the shaft pulley and wound around the shaft, and that the belt, in so winding, caught plaintiff's left hand and left arm and drew him up even with the shaft and against the joists and ceiling of the room immediately over the shaft, whereby plaintiff's hand was bruised, lacerated, torn and severed from the arm at or near the wrist and his arm bruised, lacerated, torn and severed from his body at or near the shoulder joint, his right side and chest bruised and crushed, his right leg cut and bruised, his back wrenched and bruised, and his life greatly endangered; that the injuries so received by plaintiff were caused solely by a failure of the defendant to guard the horizontal shaft, gearing, belting, pulleys and drums on said dieing out machine and on the shaft as it was the defendant's duty to do. Averring that by reason

of the injuries received and the result following therefrom plaintiff has suffered and will hereafter suffer very severe pain of body and mind and mental anguish; that he has lost and will lose much time from his usual work and occupation; is unable for a great deal of the time to do anything whatever; has been confined to his bed a part of the time; has incurred a bill of $300 for medicines, nursing, medical and surgical attention; that his nervous system has been permanently shocked and injured; that he has been permanently injured and weakened, and has lost and will lose a part of the earnings of his work and labor; that his earning capacity has been greatly and permanently impaired; and he has been permanently disabled from performing any work of his vocation or operation of machines, plaintiff places his damages at the sum of $25,000, for which, in the first count, he demands judgment.

The second count, after preliminary averments and describing the machines as before, charges common law negligence in failing to furnish plaintiff a reasonably safe place to perform his work, to keep the same reasonably safe, to furnish him reasonably safe machinery, appliances and instrumentalities with which and about which to perform his duties, etc. The accident, injuries, etc., are set out substantially as in the first count, and this second count also prays judgment for $25,000 damages.

When the cause reached the Marion County Circuit Court the defendant filed a motion to require plaintiff to elect upon which of the two counts of the petition he would proceed to trial, claiming that the counts are inconsistent and conflict with and are contradictory to each other. This motion was overruled, defendant excepting. Defendant then filed an answer, admitting its corporate name and business and the employment of plaintiff, but denying each and every other allegation in the petition. As an affirmative defense contributory negligence by and carelessness of plaintiff

are pleaded. As another affirmative defense assumption of risk is pleaded. After filing a motion to strike out parts of this answer, which motion was overruled, plaintiff filed a general denial by way of reply.

The cause was tried to a jury and resulted in a verdict in favor of plaintiff in the sum of $5000 on the first count and in favor of defendant on the second count of the petition, the latter under an instruction of the court given at the instance of defendant. Filing a motion for a new trial as well as one in arrest of judgment and saving exception to the action of the court in overruling these motions, defendant has duly perfected its appeal to this court.

REYNOLDS, P. J. (after stating the facts).— Counsel for respondent have presented a very elaborate brief and argument attacking the original abstract as defective in arrangement in that it does not distinguish matters of record proper from matters of error and exception, and for the omission of evidence counsel claim to be material. As to these and other complaints of the original abstract, we have concluded to disregard them. Appellant has filed an amended abstract which is sufficient for all practical purposes. It was filed without formal leave had, but before the cause was argued and we have concluded to let it stand. So far as it is lacking in setting out all the evidence, that fault has been corrected by respondent and we consider the case on the amended abstract of appellant and on the supplemental one of the respondent.

Counsel for appellant assign eight errors: First, that the court should have sustained defendant's motion requiring plaintiff to elect upon which count he would stand. Second and third, that the peremptory instructions asked at the end of plaintiff's testimony in chief and at the end of all of the testimony, should have been given. Fourth, that all the evidence shows that the plaintiff has no cause of action against de-

fendant and should not be allowed to recover. Fifth, that all the evidence shows that defendant was not guilty of negligence, as it conducted its business like other manufacturing companies of the same class. Sixth, that all the evidence shows that plaintiff was not injured while trying to put on the belt, as alleged in his petition. Seventh and eighth, that the court erred in overruling the motion for new trial and that in arrest of judgment and that upon the whole record the judgment should have been for defendant.

In their reply brief, counsel for appellant attack an instruction given at the instance of respondent. As no such point is set out in the errors assigned, we decline to consider this.

Taking up these assignments as nearly as possible in their order, the first assignment of error is not maintainable for several reasons. The first count in the petition is for damages sustained by failure of defendant to comply with section 7828, Revised Statutes 1909, charging that defendant was liable in that it had failed to guard certain shafting. The second count proceeds upon the employer's violation of his common law duty to use ordinary care in furnishing the employee with a reasonably safe place in which to work. Both counts refer to the same accident, with very slight variations of the form of statement, merely such variations as necessary to distinguish an action on the statute from one at common law. We find no inconsistencies in them.

In the next place, even if they were inconsistent and subject to attack for that, defendant lost the benefit of the objection by pleading over.

Over and above these reasons, the very same line of evidence was admissible under either, but there could be no recovery on both. Recognizing this the court, at the instance of the defendant itself, at the close of the case, directed the jury to find for defendant on the second count. Without regard to the action of

the court in overruling the motion to elect, interposed before the cause was at issue and apparently attempted to be raised again during the progress of the trial, defendant-has been in no manner injured or deprived of any of its right of defense by the presence of the two counts in the petition until the close of the testimony in the case. If anyone was injured by this joinder it was plaintiff in that he assumed an unnecessary burden by his second count.

The remaining six assignments can practically be treated together. In point of fact they go to plaintiff's right to recover on the facts as pleaded and as in evidence. That involves the construction of section 7828, Revised Statutes 1909.

Preliminary to going into that, it is to be noted that learned counsel for appellant attack in this court for the first time, not having raised the question in the trial court, the constitutionality of the act in which this section 7828 was contained. A long line of decisions in this State settle beyond all room for argument the proposition that if parties invoke the Constitution as against any law, they must do so at the first opportunity and in the trial court. Moreover, the learned counsel must have overlooked the plain, mandatory constitutional provision which ordains that any and all cases involving the construction of the Constitution of this State are within the exclusive jurisdiction, on appeal or writ of error, of the Supreme Court of the State and are not within the jurisdiction of this court.

We are relieved of all embarrassment as to its constitutionality, however, in proceeding to the consideration of this section involved or of the act in which it first appeared, by the judgment of our Supreme Court in Simpson v. Witte Iron Works Co., 249 Mo. 376, 155 S. W. 810. There our Supreme Court, with this section 7828 under consideration, held it constitutional. In Williams v. Atchison, Topeka & Santa Fe Ry. Co.,

233 Mo. 666, 1. c. 680, 136 S. W. 304, that court held sec-
tion 7844 of the same article unconstitutional, but held
the remainder of the act to be a valid and constitu-
tional enactment; that this particular section was "con-
stitutional and enforceable in all cases justly falling
within its provisions."

As covering another point made by counsel in ar-
gument against the petition in that it lacked an aver-
ment of notice by the factory inspector to guard this
machinery, it is further said by our Supreme Court in
the Simpson case, supra, Judge LAMM, it is true, stat-
ing it in an opinion in which is in part in concurrence
and part in dissent with that of Judge BOND, that "on
full consideration we all agree that our opinion in the
Williams case, in so far forth as it dealt with the ques-
tion of notice, was an inadvertent side step into *obiter*
by traveling further than was called for;" and after
so disposing of what was said on that in the Williams
case, Judge LAMM, speaking for all the court, as we
understand, concludes: "The sum of it all is that on
the manifold grounds suggested it should be held that
a notice from the inspector, under section 7842, was
not a condition precedent to a right of action in plain-
tiff, under section 7828." It is due to counsel for ap-
pellant to say that in the argument before us by one
of those counsel, as well as by the reply brief filed
by counsel, they have admitted that the questions of
the constitutionality of this section and of the neces-
sity of notice by the factory inspector to the employer
to put in guards for shafting, belting, etc., in view of
the decision of our Supreme Court in the Simpson
case, are no longer in this case.

The count upon which this verdict and judgment
rests, to repeat, is bottomed on section 7828, Revised
Statutes 1909. It reads: "The belting, shafting, ma-
chines, machinery, gearing and drums, in all manufac-
turing, mechanical and other establishments in this
State, when so placed as to be dangerous to persons

employed therein or thereabout while engaged in their
ordinary duties, shall be safely and securely guarded
when possible; if not possible, then notice of its dan-
ger shall be conspicuously posted in such establish-
ments." That was the law when the accident here
under consideration occurred. This section as orig-
inally enacted in 1891, did not contain the words "ma-
chines, machinery," after the word "shafting." These
two words were inserted by amendment by the Act ap-
proved June 14, 1909, as see Acts 1909, p. 502.

Several cases have been before our courts prior
to the amendment of 1909. The reason for the amend-
ment which added the words "machines, machinery,"
is doubtless to be found in them. Thus our Supreme
Court had held in Smith v. Forrester-Nace Box Co.,
193 Mo. 715, l. c. 738, 92 S. W. 394, decided February
26, 1906, that this section of the statute, as originally
enacted applied to guarding of "belting, shafting,
gearing and drums" alone, and did not cover ma-
chinery or machines generally. This was followed by
Czernicke v. Ehrlich, 212 Mo. 386, l. c. 394, 111 S. W.
14, decided May 19, 1908. So held our court in Cole v.
North American Lead Co., 130 Mo. App. 253, 112 S. W.
753, decided March 31, 1908, and our Supreme Court in
the same case, 240 Mo. 397, 144 S. W. 855, decided
February 29, 1912, the cause of action accruing before
the amendment of 1909. The effect of the amendment
of 1909 was to broaden the scope of the original enact-
ment and take in all machines and machinery in all
manufacturing, mechanical and other establishments
in our State, when so placed as to be dangerous to
persons employed therein or thereabout while engaged
in their ordinary duties.

Learned counsel for appellant in their reply brief
claim that the words "therein" and "thereabout" are
restrictive and do not include ";the machines and im-
plements upon which the employee in the discharge of
his ordinary duty was working;" that if it was in-

tended to do that the words used would have been "therewith" or "thereat." That is a mere play on words. The lawmakers unmistakably used words intending to give the statute the very widest and most inclusive meaning possible. The courts, following the language of the statute as it then read, confined its operation to "belting, shafting, gearing and drums," adhering strictly to the technical meaning of those terms. The lawmakers, with those decisions before them, beyond all doubt intended by the amendment of 1909 to remedy this and cover all appliances, machines and machinery. "Therein" covers all persons working in the establishment, in all its parts, and at all the machines and machinery therein; "thereabout," as used, and not with the conjunctive "and," but with "or," as disjunctive, covers not only persons actually working at and with machines and machinery used in the establishment, but those working about them—even if not actually operating machinery, etc., themselves. The employee working at and with an unguarded machine, belt, shafts, etc., is within the protection of the statute; so is the employee engaged in ordinary duties on the premises, those duties not necessarily requiring him to work with the machinery, etc., but to work "about" it; that is, in and around and about it while in operation.

With the exception of the words "machines" and "machinery," this section 7828 appeared for the first time in our law by the Act approved April 20, 1891 (Laws 1891, p. 159), the act being entitled "Inspection: Health and Safety of Employees." It will be noticed that the article in which section 7827 now appears is entitled "General Provisions for Health and Safety of Employees." This section 7828, omitting the words "machines" and "machinery," was section 3 of this Act of April 20, 1891. Our General Assembly had entered upon the line of protection of em-

ployees sometime before that, first commencing with provisions for the safety of mines and miners, then looking particularly after the care of women and children, subsequently providing for the appointment of inspectors of buildings in cities of a certain population, until gradually the law has assumed the broad and general features which now distinguish this article.

One of the earlier cases arising under this particular section of the law was Huss v. Heydt Bakery Co., 210 Mo. 44, 108 S. W. 63. In that case it appears that contributory negligence as well as assumption of risk had been pleaded. It is said (l. c. 54) in the opinion of the majority, that notwithstanding the statutory duty imposed and notwithstanding there had been a failure to perform that duty, "yet the defendant, so failing in the performance of the statutory duty, can avail himself of the plea of contributory negligence." The court further said, however, as to the plea of assumption of risk, that "it must rest upon a different basis, and we do not discuss it, for the reason that while the court refused to strike out such plea in the answer, yet, when the case was submitted to the jury, the instructions submitted no such issue. What we do say is that the contributory negligence of the plaintiff in such cases is held to be a proper defense, and this instruction properly covers that phase of the case." There was a very vigorous dissenting opinion filed in this case by Judge WOODSON. It commences at page 59 and in clear and forceful language gives a very broad construction to this section. Briefly it may be said of it, that after announcing the proposition that to understand the true meaning of the statute, we must first understand what the law was upon that subject prior to the passage of the act, and in that light look at the evil which the Legislature intended to abolish by the enactment, the judge holds that such construction should then be given the act as would carry out

that intention. Stating the common law rule as to the liability of the master prior to the passage of the statute, as to which our Supreme Court in Lore v. American Mfg. Co., 160 Mo. 608, l. c. 622, 61 S. W. 678, has said that "in the absence of a statute the master was not bound to fence his dangerous machinery," Judge WOODSON (l. c. 64) summarizes the common law as holding that it was "only the duty of the master to furnish the servant a reasonably safe place and reasonably safe appliances with which to do his work; and if the master performed those duties, the servant could not recover damages for injuries received in consequence of coming in contact with the machinery; and that law was applicable to all injuries sustained by the servant and it was wholly immaterial whether the injury was the result of his own negligence and carelessness or whether it was the result of an assumed risk, which is always a mere accident, nothing more nor nothing less, because where neither the master nor the servant was guilty of negligence which caused or contributed to the injury, then all the books hold that the injury was the result of an accident, or an assumed risk, which, as above stated, are one and the same thing, and for neither of which is the master liable." Stating that as the law, Judge WOODSON enters into an examination of the evil the Legislature had in mind and wished to remedy by the passage of the act. He refers to our Act of 1891 as being the first legislative expression in our State on this matter, and to the fact that our State was one of the first to enact such a statute. Taking up an examination of this section 7828, Judge WOODSON (l. c. 67) states it, in his judgment, to be "one of the wisest and most humane statutes to be found upon our statute books, and should be given a broad and liberal interpretation, because it is remedial and highly salutary, intended to protect the employees from just such injuries as the one sustained by plaintiff in this case." Taking up the in-

structions which were given at the instance of defendant, he condemns them, particularly one that in effect told the jury that it was the duty of the plaintiff while working in the vicinity of the machine to exercise ordinary care for his own safety and that if the jury found that it was his duty to keep the aisle clean and that had he done so he would not have slipped and been injured, they should find for the defendant. As to this instruction Judge WOODSON holds that it completely emasculates and nullifies the statute and is contradictory to other instructions.

We cite and quote from this dissenting opinion of Judge WOODSON in as much as learned counsel for appellant, in their reply brief, have referred to that dissenting opinion as having been afterwards adopted by the court in Cole v. North American Lead Co., 240 Mo. 397, 144 S. W. 855, as the correct construction of the statute. We agree with counsel in this, for in Cole v. North American Lead Company, Judge WOODSON, with the approval of all the members of Division No. 1, repeats his argument as to the true construction of section 7828, as that section read prior to the amendment of 1909. It is to be borne in mind that in the Cole case the accident occurred and the action was brought before the amendment of section 7828 by the Act of 1909, so that the decision turned on the proposition that the part of the machinery through which the accident had occurred to the plaintiff was not a part of it which fell within the provisions of that section prior to its amendment in 1909. The plaintiff in the Cole case sustained his injury by reason of an unguarded "planer" which was part of the machinery in the operation of which he was engaged, and the Supreme Court held, as had our court in the same case (see Cole v. North American Lead Co., 130 Mo. App. 253; 112 S. W. 753), that the "planer" in the operation of which the plaintiff had been injured, was in

no sense "a belt, shafting, gearing or drum," or any part thereof.

In Williams v. Atchison, Topeka & Santa Fe Ry. Co., supra, as before noted, it was held that section 20 of the Act of April 20, 1891, now section 7844, Revised Statutes 1909, was void as covering a subject not embraced within the title of the Act. It is true that it is further held in that case that there was no evidence to show that any notice had been given by the factory inspector to make alterations or to change the platform, the defect in which was alleged to have been the cause of the accident, but as we have seen in the later case of Simpson v. Witte Iron Works Company, supra, this part of the opinion was held to be *obiter* and that the act itself, in spite of this particular section concerning platforms of railways, was constitutional. We may accept it then as the settled construction of this section 7828 of the statute, that it is highly remedial and that although it changes the common law, it is to be liberally construed in favor of the safety of the lives and limbs of employees, and that this was the object had in view. Its presence in the article enlarged in its scope by the amendment, in fact the whole article itself, in line with other articles in the same chapter of the revision in which this article is found, afford unmistakable evidence of the broad purpose held in view by our legislators in providing for the safety of the lives and limbs of our citizens engaged in and about the factories and workshops of the State. As is commonly the case, the people through their representatives in the Legislature, are in advance of the courts in hewing out new laws to meet new conditions and in the application of new remedies to the dangers which those conditions develop. That is eminently proper, for the legislators are the makers of the law, the courts are merely to construe them. It behooves the courts, while not lagging, to be conservative, and not anticipate by radical departures, action which they

may think should be taken by the people through their representatives in the Legislature. Justice and the courts are often referred to as slow, lagging and leaden footed, but to the honor and the glory of our courts it may be said that they are ultimately found to stand abreast with the sentiment of the people, when that sentiment is voiced in the law, and when the laws which the people have duly enacted through their representatives are to be construed. Then it is for the courts to construe the laws in the spirit in which they have been enacted. So they try to do.

The disinclination of lawyers and jurists to depart from the learning and traditions of the common law is natural. At the outset of his career the lawyer even of this day, no less than of past generations, has placed in his hands his Blackstone and his Kent, sages who have expounded the common law and derived their inspiration from its teachings. This is well illustrated in the decision of the Court of Appeals of the State of New York in Knisely v. Pratt, 148 N. Y. 372. It is true that that was a case which was not founded on the statute of New York, known, as is ours, as the "Factory Act," adopted by New York in 1890. Instead of being general in its requirements as to all employees, that statute was then confined to regulation for the employment of women and children in manufacturing establishments and it provided for the appointment of inspectors to enforce it. [See Laws New York 1890, chap. 398, p. 753.] The plaintiff in that case was a woman and over twenty-one years of age and the statute only applied to women under the age of twenty-one years, so she did not come within the statute. While the action was not brought upon the statute, the statute was referred to at the trial *nisi* and on argument before the Court of Appeals, so that the latter court stated (l. c. 376) that it would "consider this case as presenting the question whether the plaintiff is entitled to recover by reason of this statute, even if under the

principles of the common law, as applied to the facts, she had assumed the obvious risks of the employment." The New York statute provided that it should be the duty of the owner of any manufacturing establishment to furnish "in the discretion of the factory inspector, belt shifters for the purpose of throwing on or off belts or pulleys." The statute also provided absolutely that the cogs should be properly guarded. The accident which was the foundation of the action occurred through unguarded cog wheels on a machine at which plaintiff was working. As evidence of the shock which an act of this kind was to the judicial minds of a majority of the New York Court of Appeals, we quote this (l. c. 377): "In order to sustain the judgment in favor of plaintiff it is necessary to hold that where the statute imposes a duty upon the employer, the performance of which will afford greater protection to the employee, it is not possible for the latter to waive the protection of the statute under the common law doctrine of obvious risks. We regard this as a new and startling doctrine calculated to establish a measure of liability unknown to the common law, and which is contrary to the decisions of Massachusetts and England under similar statutes." The Court of Appeals then decided against the plaintiff in the case on the doctrine of assumption of risk, holding, the statute notwithstanding, that she had assumed the obvious risks of her employment. This decision was rendered February 18, 1896. It did not remain unchallenged in succeeding years and following decisions, there being many dissents and its principles criticised in several cases, but it was never overruled until in Fitzwater v. Warren, 206 N. Y. 355, decided October 22, 1912, the Court of Appeals of New York, in an opinion delivered by Chief Justice CULLEN, in which four of his associates concurred, two dissenting, the doctrine of the Knisley case was overturned and the doctrine of assumption of risk as against the statute repudiated.

In concluding his opinion in the Fitzwater case, Chief Justice CULLEN says (l. c. 358) : ''The statute which the defendants violated was enacted for the express purpose of safeguarding the persons of employees.  Where an employer deliberately fails to comply with the statute the courts should be loath, except in a very clear case, to hold that the employee assumes the risk of his master's violation of the law.  Otherwise the beneficient results sought to be attained by the statute will fail to be realized.''    In the course of his opinion Chief Justice CULLEN refers approvingly to a decision of the United States Circuit Court of Appeals for the sixth circuit—Narramore v. Cleveland, C., C. & St. L. Ry. Co., 96 Fed. 298.  The opinion of the court in that case was delivered by the then Judge TAFT.  In this decision, that in Knisely v. Pratt, supra, and the cases upon which it rests are reviewed and the conclusion in the Knisely case disapproved. Judge TAFT, after a very lucid statement of the doctrine of assumption of risk and stating that it rests on contract, express or implied, says (l. c. 302) :

''If, then, the doctrine of the assumption of risk rests really upon contract, the only question remaining is whether the courts will enforce or recognize as against a servant an agreement express or implied on his part to waive the performance of a statutory duty of the master imposed for the protection of the servant, and in the interest of the public, and enforceable by criminal prosecution.  We do not think they will. To do so would be to nullify the object of the statute. The only ground for passing such a statute is found in the inequality of terms upon which the railway company and its servants deal in regard to the dangers of their employment.  The manifest legislative purpose was to protect the servant by positive law, because he had not previously shown himself capable of protecting himself by contract; and it would entirely defeat this purpose thus to permit the servant 'to con-

tract the master out' of the statute. It would certainly be novel for a court to recognize as valid an agreement between two persons that one should violate a criminal statute; and yet, if the assumption of risk is the term of a contract, then the application of it in the case at bar is to do just that.''

In line with what is here said as to nonassumption of risk in a case within the statute, is the case of Collins v. Star Paper Mill Co., 143 Mo. App. 333, 127 S. W. 641, where at page 345, Judge BROADDUS states the rule practically as laid down by Judge TAFT, citing Missouri authorities in support of it. In passing we say of this Narramore case that it was urged that because the omission to provide safeguards was a crime and punishable as such, that therefore resort must be had to the criminal provisions alone and no civil right of action was conferred upon the employee. It was in answer to this contention that Judge TAFT made the above remarks. They are as applicable, on general principles, under our statute as under that of Ohio. Further along in his opinion, Judge TAFT treats of the distinction between the assumption of risk and contributory negligence, holding, as our court did in the Huse case, that the statute did not provide against contributory negligence.

In St. Louis Cordage Co. v. Miller, 126 Fed. 495, the United States Circuit Court of Appeals held that this statute of ours does not abolish the defense of assumption of risk. Judge THAYER dissented. In Lohmeyer v. St. Louis Cordage Co., 137 Mo. App. 624, 119 S. W. 49, our court adopted the view of Judge THAYER. That opinion is in line with that of Judge TAFT in the Narramore case. The Lohmeyer case came to us on transfer from the Supreme Court, as see same case, 214 Mo. 685, 113 S. W. 1108.

With these rules of construction and interpretation of this statute before us, we are of opinion that plaintiff in this case, respondent here, has, in the first

count of his petition, upon which the case went to the jury, stated a case within the statute and by his testimony in the case has furnished substantial evidence warranting the jury in the conclusion at which it arrived.

Without going into the instructions in detail, it is sufficient to say of them that they correctly placed the case before the jury. The defendant asked instructions on the doctrine of assumption of risk which the court properly refused. It asked an instruction on contributory negligence which the court gave, this latter instruction concluding in this language: "And if the jury further finds from the evidence that the plaintiff at the time of the injury did not conduct himself with reasonable and ordinary care in putting on the belt, then the court instructs the jury that plaintiff was guilty of contributory negligence and cannot recover in this case and the verdict must be for the defendant." In the instructions given at the instance of plaintiff the court defined ordinary care and told the jury at the instance of plaintiff, that in order to find for plaintiff they must find that while engaged in his work he was exercising ordinary care, telling the jury, however, that the burthen of proving contributory negligence was on the defendant. Hence, so far as plaintiff is concerned, we have a petition within the statute, evidence tending to support the petition, and instructions correctly presenting the issue to the jury.

It was in evidence by the testimony of two or more expert mechanics that by the application of very simple devices the danger from the "bucking back" of this belt would have been greatly diminished if not entirely eliminated. The defendant introduced experts familiar with these machines. They did not pretend to contradict this testimony in any substantial manner but their testimony was confined to demonstrating that this kind of machine, with its shafting and belting was used in exactly the condition found on the premises of defend-

ant by many of the great shoe manufacturing concerns of the country. From this it is argued that the employer, defendant here, had no reason to suppose that when this machinery was placed as it was in this factory, it would be dangerous to persons employed therein or thereabout while engaged in their ordinary duties. Learned counsel for appellant argue that this plaintiff had replaced this belting in perfect safety to himself one hundred and twenty-six times and that it would be a grievous wrong against this defendant to hold that because on the one hundred and twenty-seventh attempt plaintiff was injured that defendant should be held responsible as for negligence in not providing safeguards against the occurrence of an accident it could not have anticipated. Neither of these arguments is sound. In the absence of positive law, custom may make a law, but no custom can prevail against the positive law. No matter if every shoe manufacturer in the United States was running his machinery without proper safeguards, that fact of usage and custom is no defense whatever; it is tantamount to saying that because nobody obeys the law, the law is not of any force. The fact that this unfortunate plaintiff had operated around and about this machinery for one hundred and twenty-six times without danger to himself, is of no significance in view of the fact that on the one hundred and twenty-seventh attempt he was injured. It was to guard against the possibility of just such an accident as this happening on the one hundred and twenty-seventh attempt to operate the machinery that this statute was passed. This is a preventive statute, a statute intended to prevent, as far as practicable, the possibility of accidents of this kind occurring. If we were to follow to its logical conclusion the argument of the learned counsel for the appellant, before the law would come into force, it would be necessary for several accidents to have happened before the employer would be liable for his disobedience

to the law. If one or two or three happened, the argument would then very likely be made that these were exceptions and did not prove the rule. That will not do. The very fact that this accident happened to this plaintiff under the circumstances in evidence in this case was a fact for the jury to consider in determining whether the shafting and belting were "so placed as to be dangerous to persons employed therein or thereabout while engaged in their ordinary duties; and whether they could be and were properly guarded. These were facts to be found by the jury and they were instructed that to find for plaintiff they must so believe. Their verdict is conclusive on us on those facts.

We are referred by learned counsel for appellant to decisions of our court in Letanovsky v. Friedman-Shelby Shoe Co., 157 Mo. App. 120, 137 S. W. 321, and in Miniea v. St. Louis Cooperage Co., 175 Mo. App. 91, —— S. W. ——. Nothing said in either of those cases lends support to the contention of the learned counsel for appellant. It is true there are expressions in the opinion of our court in Meifert v. New Union Sand Co., 124 Mo. App. 491, 101 S. W. 1103, and in Strode v. Columbia Box Co., 124 Mo. App. 511, 101 S. W. 1099 which gives some color to the argument of defendant. The facts in those cases, however, were entirely different from those at bar and the point now contended for in this case was not in decision in those cases. We approved the decision in the Strode case and the Lohmeyer case, but in that same opinion we adopted the dissenting opinion of Judge THAYER in the Miller case. There are some expressions in the opinions in the Strode and Meifert cases that go beyond what was necessary to their decision. In so far as they are in conflict with what we here hold, we are obliged to disapprove those expressions.

We are referred to Lang v. Bolt & Nut Co., 131 Mo. App. 146, 110 S. W. 614. There it is held plain-

tiff was not injured while engaged in his ordinary duties, hence was not under the statute.

We are also referred by counsel for appellant to Smart v. Wabash Railroad Co., 164 Mo. App. 61, l. c. 65, 148 S. W. 172, as holding "whatever is according to the general usage and ordinary course adopted by those in the same business is reasonably safe within the meaning of the law." We do not find any such language used in the Smart case and do not think that the opinion justifies any such conclusion. As before remarked, to adopt any such rule would be to allow the custom of those engaged in the business to nullify the law and strike down all of its safeguards.

While we have not noticed here all the cases cited by the learned and industrious counsel for appellant, we have not overlooked any. We do not follow those not of our own Supreme Court where divergent from the views here expressed; others we do not think applicable.

If we were to accept the argument of learned counsel for appellant, we would be compelled to hold as a matter of law that this belting needed no guards; was not unsafe. That we decline to do. These are, save in cases where there can be no room for difference of opinion among reasonable men, all questions for the jury. Here it most certainly cannot be said, on the facts in evidence, that this belting was not "so placed as to be dangerous to persons employed therein or thereabout while engaged in their ordinary duties," and that it was not possible to be "securely guarded."

On careful consideration of this case and of the facts as well as of the arguments of the learned counsel for the appellant, we have arrived at the conclusion that the judgment of the circuit court was right. That judgment is affirmed. *Nortoni* and *Allen, JJ.,* concur.